# CITIZENS STATE BANK OF ENDERLIN, Respondent, v. R. B. SKEFFINGTON, Appellant.

(196 N. W. 953.)

**Trial — testimony, improperly admitted, unless stricken or jury admonished to disregard, considered to determine whether verdict sustained by evidence.**

1. Where testimony is admitted over objection, and thereafter the court reverses its ruling, but does not strike out the testimony or in any manner direct the jury to disregard it, such testimony is before the jury and must be considered in determining whether the verdict has support in the evidence.

---

Note.— (2) Parol evidence admissible to identify person in contract, see 10 R. C. L. 1078; 4 R. C. L. Supp. 690.

(3) Implied or apparent authority of corporate officer other than those of banks to indorse commercial paper, see note in 12 A.L.R. 130; 7 R. C. L. pp. 453, 643; 2 R. C. L. Supp. 384, 423; 4 R. C. L. Supp. 484, 492; 5 R. C. L. Supp. 406.

(4) Representation as to material matters of fact made by promoters for purpose of procuring subscription to stock, see 7 R. C. L. 239; 2 R. C. L. Supp. 322.

(7) Burden on plaintiff to prove good faith ownership of note, see 3 R. C. L. 1040; 1 R. C. L. Supp. 955; 4 R. C. L. Supp. 232; 5 R. C. L. Supp. 215.

(8) Authority of corporate officer to transfer and indorse commercial paper, see 7 R. C. L. 644.

(10) What constitutes value of commercial paper, see 3 R. C. L. 1054; 1 R. C. L. Supp. 963.

**Evidence — parol evidence admissible to show person signing contract for corporation as president was in fact acting president.**

2. Parol evidence is admissible to show that a person who signs a contract in behalf of a corporation, as president thereof, was in fact the acting president of the corporation. While the records of the corporation are competent evidence to prove who its officers are, that method is not exclusive.

**Corporations — rule stated as to implied ex-officio power of president to transfer negotiable bills receivable of corporation by indorsement; innocent purchaser of corporation's negotiable bills receivable may stand on presumption of president's power to transfer by indorsement until rebutted.**

3. The president of a business corporation has the implied ex officio power, in the ordinary course of its business, to indorse its negotiable bills receivable, for the purpose of transferring title thereto, unless such power be withheld expressly or by reasonable implication, to the knowledge of the person dealing with the corporation; such power is presumed and need not be proved, in the first instance, by an innocent person claiming under its exercise, and such person takes the negotiable instrument free from infirmities of which he had no knowledge. Under such circumstances, he may stand on the presumption that the officer indorsing the instrument had the authority to do so, until such presumption is rebutted by competent evidence.

**Corporations — statements of solicitor as to dividends corporate stock would earn held not representations of a fact.**

4. Statements by the solicitor of subscriptions to stock in a corporation to be organized, as to the dividends the stock will earn, are not, under the evidence here, representations of a fact.

**Corporations — fact that corporate stock for which note given not delivered held not to show failure of consideration.**

5. For reasons stated in the opinion, it is *held*, that the evidence does not show a want or failure of consideration.

**Bills and notes — evidence held to sustain verdict for plaintiff in action on note as against defense of fraud in inception and that plaintiff not holder in due course.**

6. For reasons stated in the opinion, it is *held*, that the verdict, upon the question of fraud in the inception of the note and upon the question of whether the plaintiff is a holder in due course, has ample support in the evidence.

**Bills and notes — rule stated as to when burden on plaintiff to prove good faith ownership of note.**

7. Where, in the defense to a promissory note, there is evidence that the note was obtained by fraud, duress, force or other unlawful means, or for an illegal consideration, or under such circumstances as amount to fraud, the burden is on the holder of the note to prove, by a preponderance of the evidence, his good faith in the transaction.

**Corporations — maker cannot ordinarily defeat note on ground that officer of payee corporation lacked authority to indorse it.**

8. The maker of a promissory note cannot ordinarily defeat it on the ground that the officer of the payee corporation who endorsed the note lacked authority to do so.

**Corporations — holder may prove that indorsement of note by officer of payee corporation was subsequently ratified.**

9. In a suit by the holder of a negotiable note against the maker, the plaintiff may prove, by competent evidence, that the unauthorized indorsement of the instrument, by an officer or agent of the payee corporation, was subsequently ratified by the payee.

**Bills and notes — issuing negotiable draft in payment of note held parting with "value."**

10. Issuing a negotiable draft in payment of a note is parting with value, within the meaning of § 6910, Comp. Laws 1913, being § 25 of the Neg. Inst. Law.

Opinion filed January 4, 1924.

Appeal and Error, 4 C. J. § 2580 p. 679 n. 42. Bills and Notes, 8 C. J. §§ 699 p. 481, n. 73; 1002 p. 716 n. 91; 1017 p. 744 n. 30; 1292 p. 984 n. 60; 1358 pp. 1046 n. 9, 1047 n. 10; 1359 p. 1049 n. 25; 1361 p. 1052 n. 50. Corporations, 14 C. J. § 879 p. 609 n. 13; 14a C. J. § 2241 pp. 387 n. 40, 389 n. 45; §§ 2248 p. 395 n. 4; 2256 p. 406 n. 13; 2312 p. 454 n. 23. Evidence, 22 C. J. § 1294 p. 1012 n. 52. Fraud, 26 C. J. § 25 p. 1087 n. 43. Trial, 38 Cyc. pp. 1401 n. 15; 1444 n. 80.

Appeal from the District Court of Ransom County, North Dakota, *Allen*, J. Action on a promissory note.

Affirmed.

*Ego, Craig & Thompson,* for appellant.

Appellant contends, that on the record of this case, the plaintiff is in the same position as one who takes a note without any endorsement whatever. See § 49, Negotiable Instruments Law and the notes by commentator in Crawford's Neg. Inst. Law, pp. 89–91. Compare § 6934, Comp. Laws.

The request, in substance correctly states the law, is applicable to the facts, and it was manifest error to refuse. See § 56, Crawford, Neg. Inst. Law, pp. 102–105. Compare with § 6941, Comp. Laws.

"Title to commercial paper passes by indorsement and when the indorsement is made by one other than the owner, it is necessary to

show that the one making such indorsement had authority from the owner to indorse the same, and the party asserting ownership by virtue of such indorsement has the burden of proving such authority." Alcester v. Weeks, 189 N. W. 941.

"The indorsement of commercial paper being an act that must be done in writing, the authority to perform such an act must be conferred by written authority." Ibid.; 21 R. C. L. 870, ¶ 45; 2 C. J. 836.

*Krello & Adams,* for respondent.

"One who ratifies the unauthorized act of an agent by accepting the benefits of the transaction will be held to incur the obligations as well as the benefits of the transaction." Fleming v. Sherwood, 24 N. D. 144, 139 N. W. 101.

"Though the secretary of a corporation has no authority to transfer commercial paper, yet the corporation may, by its subsequent conduct, ratify such a transfer." McCormick v. Bittinger (Colo.) 37 Pac. 736; Coykendall v. Constable (N. Y.) 1 N. E. 884; Brown v. Wilson (S. C.) 55 Am. St. Rep. 779.

The maker cannot deny the authority of the indorsement by the payee's agent as against the bona fide holder. New Haven City Bank v. Perkins (N. Y.) 85 Am. Dec. 322.

In a suit by the holder in due course against the maker of a negotiable note the genuineness of the indorsee's signature is immaterial if he has either authorized or ratified the indorsement. Manchester v. Parsons (W. Va.) 84 S. E. 885.

Ratification may be shown by recognition of the indorsee as owner. 8 C. J. p. 338, note 3 (c) 4.

Acceptance of the proceeds of a sale of a note ratifies the transaction. Hunt v. Liztenberger (Ind.) 42 N. E. 240; Continental Nat. Bank v. Koehler (N. Y.) 22 N. E. 1133; Wheeler v. Mfg. Co. (Pa.) 22 Atl. 667; Allen v. Olympia Light, etc., Co. (Wash.) 43 Pac. 55.

The principal must repudiate the unauthorized contract of indorsement within a reasonable time. Lynch v. Smith (Colo.) 54 Pac. 634; Anderson v. Johnson (Minn.) 77 N. W. 26; Hotchkiss v. Roehm (Pa.) 37 Atl. 119; McWhinne v. Martin (Wis.) 46 N. W. 118.

Ratification relates back to the time when the unauthorized act was done, and makes it as effective from that moment as if it had been originally authorized, and that therefore upon ratification of parties

to all intents and purposes stands in the same position as though the person assuming to act as agent had acted under authority conferred. Kraft v. Wilson (Cal.) 37 Pac. 790; Ansonia v. Cooper (Conn.) 30 Atl. 760; Connett v. Chicago (Ill.) 29 N. E. 280; Long v. Osborn (Iowa) 59 N. W. 14; Municipal Secur. Co. v. Baker Co. (Or.) 54 Pac. 174; Bell v. Waynesborough (Pa.) 45 Atl. 930.

No fraud can be predicated upon mere expression of an opinion in regard to a matter of which the other party is clearly competent to judge. Heyrock v. Surerus, 9 N. D. 28, 81 N. W. 36.

A false representation of mining stock, selling at 15 per cent of its par value that it is worth par is not one upon which the purchaser has the right to rely. Gunderson v. Havana-Clyde Min. Co. 22 N. D. 320, 133 N. W. 554.

Representation to the subscriber for stock that the earnings of the corporation would take care of his note and that he never would be called on to pay anything were not representations of fact on which he had a right to rely, but mere expressions of opinion as to what the future would bring forth.

A subscription to corporate stock is a good consideration for a note though the stock is not delivered. Doyon v. Fogleson (S. D.) 192 N. W. 752.

No one has a right to rely on representation which merely amounts to statements of opinion. Mattock v. Zippy (Ark.) 14 S. W. 546.

Representations are not actionable unless the bearer was justified in relying thereon in the exercise of common prudence and diligence. 26 C. J. p. 1142; Brandt v. Krogh (Cal.) 111 Pac. 275; Wheelright v. Vanderbilt (Or.) 138 Pac. 857.

There can be no fraud without misrepresentation of a past or existing fact or something equivalent thereto. Marshall McCartney Co. v. Halloran, 15 N. D. 71, 106 N. W. 293.

The burden is on the party alleging that the fraud was of an actionable nature and not, for instance, a mere estimate of future expenses, instead of definite and positive statement covering a past period. 27 C. J. p. 47, § 174.

JOHNSON, J. This is an appeal from the district court of Ransom county. The plaintiff brought this action against the defendant upon

a promissory note. There was a jury trial, with verdict and judgment entered thereon in favor of the plaintiff for the full amount of the note. The defendant appeals. The appeal is from the judgment.

On the 19th of September, 1919, the defendant executed a promissory note in the sum of $102, with interest at the rate of 8 per cent payable to the Publishers National Service Bureau and payable November 1, 1920. On September 22, 1919, the note was negotiated to the plaintiff.

The complaint is in the usual form. The defendant's answer admits the corporate character of the plaintiff, but denies every other allegation in the complaint. In general, it is alleged that the defendant was induced to execute the note by one Zimmerman, who made numerous fraudulent representations in order to accomplish his designs. It is alleged that Zimmerman represented himself to be the agent of the Bureau, and, for the purpose of deceiving the defendant, falsely stated that if defendant would subscribe for stock in the corporation, the earnings of the stock would automatically retire defendant's note to be given in payment for the stock; that the defendant and other subscribers for such stock would own and control the corporation and have a vote and a voice in the election of the corporate officers thereof; that the promoters intended to establish two papers in the county, one at Enderlin and one at Lisbon; and that such papers would be established at such places as soon as the canvass for the stock had been completed and the organization perfected and subscribers would then control the enterprise; that Zimmerman further represented that the Bureau was a corporation under the laws of the state of North Dakota, authorized by the State Banking Board to sell stock under the provisions of chapter 91, Session Laws of 1915, and amendments thereof, commonly known as the Blue Sky Law; that such statement was untrue and that the Bureau did not have a license to sell stock in the state. It is then alleged that the defendant, believing such representations, was induced to sign the note and subscribe for the capital stock; that, though the Bureau was a speculative enterprise, it neglected to comply with the provisions of chapter 91 of the Session Laws of 1915 and amendments.

The record in the case tends to show the following facts pertaining to the numerous assignments of errors on this appeal. The defendant testifies, in substance, that on or about the 19th day of September,

1919, one Zimmerman called at his farm home and persuaded him to sign the note in suit; that Zimmerman represented the Publishers National Service Bureau, one of the enterprises organized in connection with the promotion of the interests of the organization known as the Nonpartisan League; that Zimmerman advised plaintiff that this Bureau contemplated the organization of newspapers throughout the State of North Dakota; that the newspaper to be organized would be controlled by the stockholders of the organization in each county. This witness further stated that Zimmerman said "As soon as this paper was organized, the paper would be controlled by the stockholders of the paper and that the Publishers National Service Bureau would get editors and get out the news sheet so that the papers throughout the state would be uniform and they would have the same propaganda." The defendant further testified that Zimmerman told him that the dividends on the stock for which Zimmerman solicited defendant's subscription, would pay the note given, and that no cash outlay of any kind would ever be required of him. Defendant knew and understood that he subscribed to the capital stock of a corporation to be organized in Ransom county; that such was his primary purpose and the end he had in view when he subscribed for the stock; he testifies, further, that he understood that the paper would be located at Lisbon, but in point of fact, it was located at Enderlin in the same county, and the defendant, shortly after the subscription by him and the execution of the note in suit, began regularly to receive a copy of the paper and has at all times since received the same. The defendant further admits that some of his neighbors were interested in this corporation and in fact actively concerned in it. Quite frequently the witness says he cannot remember. He says he cannot remember whether Zimmerman said anything about organizing a newspaper at Enderlin instead of at Lisbon. He does say that he told him that he was selling stock in a paper that was to be started at Lisbon; that "they were going to have a propaganda organ and were going to have a newspaper of their own." He also says that Zimmerman induced him to sign this note by saying that if he signed, "it would be easier to get others." It appears there were two classes of stock, common and preferred, but this witness says that the stock salesman said nothing to him about this arrangement, simply represented that he was selling stock in a paper to be started.

It seems also that the amount of the note included a subscription to the paper to be "put in the county." The witness further stated that he "never attempted to have anything to say" personally about the control of the newspaper; that he had finished the grades and two years in a high school and had taken, at least in part, a business course besides.

The articles of incorporation of the Ransom County Farmers Press, the corporation that was organized and which published the Enderlin Independent, the newspaper received by the defendant and apparently the propaganda organ described by him in his testimony, were offered in evidence. It appears therefrom that the plan of organization was that the stock of the corporation should be common and preferred; that there should be 300 shares of common stock of the par value of $1.00 and 610 shares of preferred stock of the par value of $20.00 per share; holders of the preferred stock were given the same voting power as holders of the common stock and each share holder at all elections of directors "shall be entitled to as many votes as shall equal the number of his shares of preferred and common stock." It appears from the testimony of the defendant's witnesses that the Publishers National Service Bureau retained nominal control of the local paper and corporation by reason of retaining or owning all of the common stock. It is because of this fact that the defendant contends that the stock salesman committed fraud upon him when he represented that the paper would be controlled by stockholders. In order to avoid this control from the outside, the articles were amended in 1921, with the purpose of converting all of the stock into common stock. It appears, however, in the testimony of one Aarhus, that the Bureau never exercised its power of control over the local paper, at least not beyond furnishing the propaganda and perhaps assisting in supplying the editorial talent. This seems to have been satisfactory to all concerned.

On the 22d of September, 1919, when the note was negotiated to the plaintiff, it appears that Aarhus, as sales manager of the Bureau, appeared in the office of the plaintiff and applied for a loan of $3,500 in behalf of the Bureau. After going over the matter, a loan was made to the Bureau in the sum of $3,000, secured by collateral notes of sixty or more farmers and individuals residing in Ransom county. Included among this collateral was the note in suit. It appears that many of

these notes were given for the purchase of stock in the newspaper to be organized in Ransom county, pursuant to the testimony of the defendant and statements to him of the stock salesman Zimmerman. The plaintiff issued its draft to the Publishers National Service Bureau, Plaintiff's Exhibit 3, in the sum of $3,000. This exhibit bears numerous indorsements, including that of the Bureau, and was paid on September 27, 1919. The evidence shows that collections upon the collateral notes heretofore described were made by the plaintiff and credited upon the $3,000 note (plaintiff's exhibit 2) with the result that at the time of the trial there was a balance due thereon of approximately $1,300. The note in suit bears the following indorsement: "Publishers National Service Bureau, By W. W. Liggett."

The testimony further shows that the sales manager of the Bureau exhibited to the cashier of the plaintiff, before the loan was made, the draft issued, and before the note in suit was taken as collateral, written authority from the Bureau to negotiate loans in its behalf. The note in suit contains in parenthesis, under the name of the payee, the word "incorporated." The payee would, therefore, be estopped from denying its corporate character and the defendant cannot complain because plaintiff offered no other proof thereof.

There was read at the trial and in defendant's behalf, the deposition of J. R. Murphy, secretary of the State Blue Sky Commission. His testimony, in substance, shows that the Publishers National Service Bureau never obtained license to sell its stock in the State of North Dakota as required by chapter 91, Session Laws 1915. The record, however, shows that the stock which the defendant subscribed for and in payment of which he executed the note in suit, was not stock in the Publishers National Service Bureau, but in a corporation to be organized for the purpose of publishing a paper in Ransom County. The testimony of the witness was, therefore, not material to any issue in the lawsuit. No further reference will be made to errors alleged in regard to this deposition.

The appellant alleges numerous errors. He asserts that there is no competent evidence to prove title to the instrument in the plaintiff; that is to say, he contends that the endorsement of the note in suit has not been proved and that, therefore, plaintiff's title to the note has not been established. He further contends that there is no proof of agency,

that is, of authority to sell, endorse, and deliver the note in suit; nor is there any competent evidence of ratification of a prior unauthorized indorsement. It is also contended that there was fraud in the inception of the note and plaintiff had knowledge thereof so that it is not a holder in due course within the definition of § 6937, Comp. Laws 1913, being § 52 of the Neg. Inst. Law; that the defendant received no consideration for the note, that is, he contends in effect that there was a failure of consideration so as to constitute a defense within the provisions of § 6913, Comp. Laws 1913, being § 28 of the Neg. Inst. Law; that the court erred in instructions to the jury; that instructions requested were improperly refused; and that the court erred in ruling upon the admissibility of evidence. We shall discuss these propositions in the order presented.

If the contention of the appellant be sound to the effect that the plaintiff failed to prove by competent evidence the transfer of the note in suit, it follows that the judgment of the trial court must be reversed. It is elementary that the holder of negotiable paper must prove title to the instrument before he can recover thereon. In the case at bar, the instrument was made payable to a person other than the holder and it was, therefore, its duty to prove by competent evidence its title thereto, the same having been denied in the answer and contested at the trial. It is contended by the appellant that there is no evidence in the record to show that the indorsement, which appears on the back of the instrument, was in fact duly authorized by the corporation; that the oral testimony of the sales manager, Aarhus, to the effect that he knew that when the indorsement was made, W. W. Liggett was in fact the president of the corporation, was improperly admitted.

The witness Aarhus testified over objection that W. W. Liggett was the acting president of the Publishers National Service Bureau on September 22, 1919, and for some time prior, as well as subsequent, thereto; the witness knew this personally from being present at meetings, from the fact that he was sales manager of the corporation and from observation. After this testimony had gone in, the court said that he believed his ruling, admitting the parol testimony of Aarhus as to the official position of Liggett, was erroneous and said: "I think I will reverse myself and sustain the objection" to this testimony. No motion was made to strike the testimony from the record and no in-

struction requested or in fact given to the jury to disregard it. The testimony, therefore, was before the jury and must be considered in determining whether the verdict has support in the evidence. North Pacific Lumber Co. v. Spore, 44 Or. 462, 75 Pac. 890. Thereafter, the attorney for the plaintiff asked the witness substantially the same questions, seeking to elicit the same information, but objections were sustained. There is no other evidence in the record showing the official capacity of W. W. Liggett, who indorsed the note in suit in the name of the corporation. Had the testimony been stricken, or the jury directed to disregard it, there would have been no testimony in the record or before the jury showing the official character of Liggett at the time of the indorsement. We think, however, that the first ruling of the court was correct. It seems that parol evidence is admissible to show that a person who signs a contract in behalf of a corporation, as president thereof, was acting as president of the corporation and was the de facto president. It is true that the records of the corporation are competent evidence to prove who its officers are, but this method is not exclusive. It is sufficient to show that the person executing the contract was a de facto officer. 2 Thomp. Corp. 2d ed. § 1492; Cahill v. Kalamazoo Mut. Ins. Co. 2 Dougl. (Mich.) 124, 43 Am. Dec. 457. We believe that this evidence was proper and sufficient to take to the jury the question of the official position of W. W. Liggett, in the corporation.

The president of a business corporation has the implied ex officio power, in the ordinary course of its business, to indorse its negotiable bills receivable, for the purpose of transferring title thereto, unless such power be withheld, expressly.or by reasonable implication to the knowledge of the person dealing with the corporation; such power is presumed and need not be proved in the first instance by an innocent person, claiming under its exercise, and he takes the negotiable instrument free from infirmities of which he had no knowledge. 2 Thomp. Corp. 2d ed. § 1474; Jones v. Stoddart, 8 Idaho, 210, 67 Pac. 650; Gold Glen Min. Mill. & Tunneling Co. v. Dennis, 21 Colo. App. 284, 121 Pac. 677; Iowa Nat. Bank v. Sherman, 17 S. D. 396, 400, 106 Am. St. Rep. 778, 97 N. W. 12. See also Neosho Valley Invest. Co. v. Hannum, 10 Kan. App. 499, 63 Pac. 92; Sherman Center Town Co. v. Livigart, 43 Kan. 292, 19 Am. St. Rep. 134, 23 Pac. 569. In Citizens Nat. Bank v. Wintler, 14 Wash. 558, 53 Am. St. Rep. 890, 45

Pac. 38, the court thus states the rule: "The possession by a third person of a negotiable promissory note, payable to the corporation, bearing the indorsement of such corporation, regular in form and signed by its general manager, is sufficient to raise the presumption that the officer so indorsing it had the authority to make the indorsement, and that the person having the possession thereof is the owner of the note." This is especially so when, as in the case at bar, the benefits of the transfer of the note have been received and retained by the corporation, payee therein. Gould v. W. J. Gould & Co. 134 Mich. 515, 104 Am. St. Rep. 624, 2 Ann. Cas. 519, 96 N. W. 576. The evidence shows that the benefits of the loan transaction were accepted and retained by the Bureau. It indorsed the draft issued in payment of the note and doubtless received the avails thereof; Aarhus was authorized to negotiate the loan and he executed the note, later renewed by the Bureau, that evidenced the loan; he deposited the note in suit as collateral thereto. Under the evidence, there can be no question that title passed to the indorsee and neither the payee nor this defendant can challenge the transfer. See Gould v. W. J. Gould & Co. supra. We feel no hesitancy in holding that when the note and the indorsement were offered, the plaintiff having proved the execution of the note, that the person who executed the indorsement was the acting president of the payee corporation, and that the plaintiff had no knowledge of infirmities in the instrument or want of authority in the officer who executed the indorsement, a prima facie case was made in behalf of the plaintiff, sufficient in the absence of contradictory evidence as to this authority of the president to support the verdict of the jury in its behalf. See also Citizens Bank v. Public Drug Co. 190 Iowa, 983, 181 N. W. 274. This conclusion also disposes of the contention that the court erred in admitting the indorsement.

It is strenuously contended by the appellant that the plaintiff is not a holder in due course within the definition of § 6937, supra, but that it acquired the note with knowledge of such facts as to put a prudent person on inquiry as to the existence of fraud in the inception of the note. We might dismiss this contention by simply referring to the fact that the verdict of the jury has settled this question contrary to plaintiff's contention and is binding on appeal. We have carefully examined the evidence, however, and we are satisfied that as a matter

of law there is nothing in the testimony of the defendant Skeffington upon which a claim of fraud in procuring the note can be successfully predicated. He says, in substance, that the agent came to him and claimed to represent the Publishers National Service Bureau; this statement was true and the evidence so shows. He says that this agent represented that a corporation would be organized and a newspaper published at Lisbon, but he is not sure whether Enderlin was mentioned; the witness says that he was concerned principally with promoting a newspaper in Ransom county that would espouse the interests "of the producers," meaning thereby the organization referred to in the briefs of counsel as the Nonpartisan League; the evidence shows that such a paper was established at Enderlin in Ransom county; that he regularly received the same and had no fault to find with it. He asserts also that the agent represented that the note would be paid out of profits and earnings and that defendant would never have to pay it. This was not a representation of a fact. Heyrock v. Surerus, 9 N. D. 28, 81 N. W. 36; Vouros v. Pierce, 226 Mass. 175, 115 N. E. 297; Cahn v. Northwestern Mut. L. Ins. Co. 208 Ill. App. 317; Weston v. Columbus Southern R. Co. 90 Ga. 289, 15 S. E. 773; 26 C. J. 1087. Why even a note was deemed necessary or useful if it was not to be used to provide the capital needed to launch the paper, is not explained. The jury evidently did not accept literally the testimony of the appellant in this regard. He knew that he was subscribing for shares of capital stock in a corporation which was to publish a newspaper; that the corporation must purchase equipment, engage help and rent or purchase a building in which to operate; he knew that this would require a considerable outlay of money; he must have known that before the enterprise could pay dividends it must be established and that cash was required to establish it. He does not explain from what source he expected the cash to be drawn that would be necessary to launch the enterprise. It must have been evident to him as to any rational person that the cash capital necessary to launch the newspaper must come from actual cash paid for stock or from loans, or must be obtained by discounting notes given by subscribers for capital stock. Under such circumstances, when the defendant signed the note in suit, he must be charged with the knowledge that the note and his credit would probably be used for the purpose of obtaining the necessary cash

capital. The defendant has had more than the average education; he is a graduate of the grades, has had two years of high school and a business education besides. He ought to have known, and from the record, we are satisfied he knew and the jury evidently was of the same mind, that when he signed a promissory note, he entered into a definite engagement to lend his name and his credit in furtherance of the newspaper enterprise which was in fact launched substantially in conformity with his desires. The law recognizes, and the courts must enforce individual accountability for personal conduct; that a promise to perform, solemnly made in writing over one's signature, means what it says. The law does not recognize the right of an individual to enter into an engagement in the form of a contract with mental reservations that if the venture results in disappointment, or if the obligor has a change of heart, the promise shall not be performed. It is not in the interest of public justice or of private morality, to sanction or encourage laxity in this regard. Any other attitude is alike demoralizing to business integrity and destructive of that individualism which lies at the basis of state and national progress. We find nothing in this record that shows any fraud committed upon this defendant. There is nothing to indicate that he was not in as good a position as the agent (see Gunderson v. Havana-Clyde Min. Co. 22 N. D. 329, 334, 133 N. W. 554) to understand that he assumed a personal obligation when he signed a promissory note which might, almost certainly would, find its way into the channels of commerce and upon the strength of which other persons would advance money or make loans. Indeed, he says Zimmerman told him it would be easier to "get others" if defendant signed. If he was willing to become a bell-wether in the enterprise, good faith and the law require that he accept all the responsibilities of that interesting office. We are satisfied, upon the whole record, first, that there was no fraud in fact in the inception of the note of which this defendant can complain, and, secondly, that if there was any such fraud, it was not known to the plaintiff and the finding of the jury that the plaintiff was an innocent purchaser for value and without notice has ample support in the evidence.

The allegations of the answer as to control of the newspaper are not proved. The holders of the common and preferred stock each had a vote; the Bureau never exercised its power to control the corporation

if, in point of fact, it had that power. From the record, it appears that actual control thereof was at all times in the hands of the local people who subscribed to the stock.

It is further contended that there was a failure of consideration. Under § 6913, supra, absence or failure of consideration is a matter of defense as against any person not a holder in due course. The record shows, as has been pointed out, that the defendant subscribed for stock, but that the stock was not delivered to him, apparently because he never paid the note. There is nothing in the record to indicate that the stock would not have been delivered to him promptly had he paid the note. He became entitled to five shares of preferred stock in the Ransom County Farmers Press and received in addition thereto the paper regularly published by the new corporation. We find nothing in the record to indicate that he did not receive or could not have received at any time everything to which he was entitled under his contract.

The court instructed the jury upon fraud, giving the statutory definition thereof. It is alleged that this was error because the court did not specifically apply it to the facts in the case. We do not think this position can be sustained. The court had stated to the jury the contention of the defendant upon the question of fraud and deceit in the inception of the note. In instructing the jury upon this point in the language of the statute, no error was committed and upon the whole charge it is clear that the jury could not have been misled as to the law and its proper application to the evidence.

It is also contended that the court did not properly instruct the jury as to the burden of proof. The court, in effect, said to the jury that the burden was upon the plaintiff to prove that it acquired title to the note and holds the same as a holder in due course. It then defined correctly the term "holder in due course." The instruction on this point was as favorable to the defendant as he had a right to require. This court said in Stubbins Hotel Co. v. Beissbarth, 43 N. D. 191, 174 N. W. 219: "Where, in the defense to a promissory note, there is evidence that the note is obtained by fraud, duress, force, fear or other unlawful means or for an illegal consideration or under such circumstances as amount to fraud, it would seem it would be incumbent upon the holder of the note in the suit to prove by a preponderance of the

evidence his good faith in the transaction and all the other material allegations in his complaint."

In the Stubbins Hotel Co. Case, supra, the court held that when want of consideration was alleged as a defense to a suit on a promissory note, the burden was upon the defendant to establish that defense by a preponderance of the evidence. This court, in the case of Holbert v. Weber, 36 N. D. 106, 115, 161 N. W. 560, had occasion to consider the question of the burden of proof when absence or failure of consideration was alleged as a defense. It was said that "the burden of proving his case as a whole was upon the plaintiff." It is not necessary to enter into a discussion in order to reconcile the language used in these cases. A proper analysis of the sense in which the expression "burden of proof" is used would probably show that no conflict in fact existed. Absence of consideration was pleaded in the case at bar, but the evidence conclusively shows that there was no such failure of consideration as to amount to a defense in any view of the case. The court's instruction on the burden of proof as to the absence of good faith, correctly stated the law; upon the question of consideration, there being no issue of fact, no instruction was necessary.

Upon the question of good faith in the purchase of the note, the court instructed the jury substantially in the language of § 6941, Comp. Laws 1913 (§ 56, Neg. Inst. Act). Defendant contends that this instruction is erroneous; that the jury should have been told that if the circumstances when the note was purchased "were such that they would have put an ordinarily prudent man upon inquiry as to the making and delivery of the note," then the plaintiff is not a holder in due course and the verdict should be for the defendant. The instruction given was clearly correct; the one requested as clearly erroneous. The instruction requested was expressly condemned as erroneous in American Nat. Bank v. Lundy, 21 N. D. 167, 174, 129 N. W. 99.

It is contended by the appellant that the court erred in instructing the jury in substance that even if the Publishers National Service Bureau had not authorized Liggett to execute the endorsement in the name of the corporation, nevertheless, if the corporation knowingly received the proceeds of the transaction, that would amount to a ratification and that ratification was equivalent to prior authorization. The

defendant contends that, as against a third party, the defendant and maker of the note, there can be no authorization of a prior unauthorized indorsement when the result will be prejudicial to the rights and interests of the maker. "The rule is that the maker of a promissory note cannot ordinarily defeat it on the ground that the officer of the payee corporation who indorsed the note lacked authority to do so." Lebo State Bank v. Booth, 111 Kan. 222, 206 Pac. 744. See also 8 C. J. 716. The primary concern of the maker of the note is that he shall be protected if he is compelled to pay; that he shall not be required to pay his note to one who is not rightfully entitled to payment, that is, one who is not the owner of the note, or otherwise entitled to recover thereon. Upon the question of the transfer of the title to the instrument to the plaintiff, under the facts here, the maker of the note and defendant herein is interested only to the extent indicated. That such ratification of a prior unauthorized indorsement may be made and proved in a suit by the indorsee against the maker has been held in this and in other jurisdictions. First Nat. Bank v. Wallace, ante, 330, 196 N. W. 303; Manchester v. Parsons, 75 W. Va. 793, 84 S. E. 885; City Bank v. Bryan, 72 W. Va. 29, 78 S. E. 400.

It is contended by the defendant that issuing the draft was not giving value, within the meaning of § 6910, Comp. Laws 1913, being § 25 of the Neg. Inst. Law. There is no merit to this contention. This court held, in the case of First Nat. Bank v. Wallace, supra, that issuing a negotiable draft in payment of a note was parting with value, within the meaning of the foregoing section, especially when it appeared that the draft had been negotiated.

It is contended that the court erred in refusing to give certain requested instructions. It would unduly extend this opinion, already too lengthy, to set out in full the requested instructions. It is sufficient to say that the requests were properly refused, either because they were substantially covered in the charge given, or because they contained erroneous statements of legal principles.

Errors are also assigned upon the rulings of the trial court in the reception of testimony. The assignments are not supported by citations of authorities and the argument of counsel in support thereof

is so perfunctory as to suggest that the assignments are *pro forma* rather than seriously made. They are wholly without merit.

The judgment of the trial court is affirmed.

BRONSON, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.