McLEOD STATE BANK, a Corporation, Appellant, v. ED. VAN-
DEMARK, Respondent.

(200 N. W. 42.)

**Bills and notes — plaintiff other than payee must establish title.**

1. In an action upon a promissory note by one other than the payee, it is incumbent upon the plaintiff to establish title.

**Corporations — evidence as to authority of indorser of note in name of payee corporation admissible.**

2. Where the payee is a corporation and its name is indorsed upon the back, evidence as to the authority of the one indorsing the name to transfer the instrument is admissible.

**Corporations — agent may indorse negotiable instrument of corporation without written authority.**

3. Section 6330, Comp. Laws, 1913, which provides that an oral authorization is sufficient for any purpose, "except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing" is construed and held not to require written authority to an agent to indorse a negotiable instrument belonging to a corporation.

**Principal and agent — signature may be made by authorized agent with no particular form of appointment.**

4. Under § 19 of the Negotiable Instruments Act, (Comp. Laws, 1913, § 6904) the signature of any party may be made by a duly authorized agent, and no particular form of appointment is necessary.

Opinion filed July 25, 1924. Rehearing denied September 15, 1924.

Bills and Notes, 8 C. J. § 187 p. 105 n. 62; § 195 p. 107 n. 7; § 196 p. 107 n. 12; § 512 p. 337 n. 93, p. 338 n. 1; § 529 p. 350 n. 93, 94; § 531 p. 353 n. 32; § 1316 p. 1011 n. 57, 58. Corporations, 14a C. J. § 2252 p. 402 n. 68; § 2310 p. 452 n. 87, 88.

Appeal from the County Court of Ransom County, *Davis,* Special J. Reversed and remanded.

*Kvello & Adams,* for appellant.

We do not wish to intimate that good faith may not be shown in some cases by inference from shown facts. But failure to state that

Note.—(4) Authority of agent to indorse and transfer commercial paper, see annotation in 12 A.L.R. 111.

the purchase was in good faith, is a strong circumstance in this case to negative good faith. Walters v. Rock, 18 N. D. 45, 115 N. W. 511.

Only one person can possibly have any positive knowledge on the subject of good faith of the purchase of negotiable paper and that person is the purchaser himself. Considering how peculiarly that knowledge is within the breast of such purchaser, how easy it is for him to state the fact if it exists, how almost entirely the maker of the paper is at his mercy on the question of good faith, and what opportunities for resorting to fictitious transfers to cut off defenses are afforded to the holders of paper, which they could themselves enforce, it is certainly not too much to require the purchaser, at least where he is a person and not a corporation, to state in so many words that he bought in good faith. Knowlton v. Schultz, 6 N. D. 422, 71 N. W. 550.

The president of a business corporation has the implied ex officio power in the ordinary course of its business to endorse its negotiable Bills Receivable for the purpose of transferring title thereto, unless such power be withheld expressly or by reasonable implication as to the knowledge of the person dealing with the corporation, such power is presumed and need not be proved in the first instance by an innocent person claiming under its exercise, and such person takes the negotiable instrument free from infirmities of which he had no knowledge. Under such circumstances he may stand on the presumption that the officer who endorsed the instrument had the authority to do so until such presumption is rebutted by competent evidence.

The maker of a promissory note cannot ordinarily defeat it on the ground that the officer of the payee corporation who endorsed the note lacked authority to do so.

In a suit by the holder of a negotiable note against the maker the plaintiff may prove by competent evidence that the unauthorized endorsement of the instrument by an officer or agent of the payee corporation was subsequently ratified by the payee. Citizens State Bank v. Skeffington, 50 N. D. 494, 196 N. W. 953.

If the agent of the company did not have the authority to negotiate the note nevertheless if the company knowingly received the proceeds from the bank, that would amount to a ratification and the plaintiff would be entitled to recover. First Nat. Bank v. Wallace, 196 N. W. 303; Embden State Bank v. Shea (N. D.) 196 N. W. 307; Fleming

v. Sherwood, 24 N. D. 144, 139 N. W. 101; McCormick v. Bettinger (Colo.) 57 Pac. 736; Coykendall v. Constable etc. (N. Y.) 1 N. E. 884; Brown v. Wilson (S. C.) 55 Am. St. Rep. 779; Manchester v. Parsons (W. Va.) 84 S. E. 885.

Ratification may be shown by recognition of the endorsee as owner. 8 C. J. p. 338, note 3 (C) 4.

Acceptance of the proceeds of the sale of a note ratifies the transaction. Hunt v. Litzenberger (Ind.) 42 N. E. 240; Continental Nat. Bank v. Koehler (N. Y.) 22 N. E. 1133; Wheeler etc. v. Manufacturing Co. (Pa.) 22 Atl. 667; Allen v. Olympia Light etc. (Wash.) 43 Pac. 55.

The principal must repudiate the unauthorized contract of endorsement within a reasonable time. Lynch v. Smith (Colo.) 54 Pac. 634; Anderson v. Johnson (Minn.) 77 N. W. 26; Hotchkiss v. Roehm (Pa.) 37 Atl. 119; McWhinnie v. Martin (Wis.) 46 N. W. 118.

Ratification relates back to the time when the unauthorized act was done, and makes it as effective from that moment as if it had been originally authorized, and that therefore upon ratification the parties to all intents and purposes stand in the same position as though the person assuming to act as agent had acted under authority conferred. Kraft v. Wilson (Cal.) 37 Pac. 790; Ansonia v. Cooper (Conn.) 30 Atl. 760; Connet v. Chicago (Ill.) 29 N. E. 280; Long v. Osborn (Iowa) 59 N. W. 14; Municipal Sec. Co. v. Baker Co. (Or.) 54 Pac. 174.

It is necessary in order to avail oneself of fraud, pleaded as a complete defense to the note in suit, that the note maker plead and prove rejection and tender a rescission of his contract of stock subscription by virtue of the note in suit and failure so to do was fatal to the maintenance of his defense based on fraudulent representations. Unless said stock subscription was alleged to be and shown to be worthless and of no advantage to the note maker so that there would be no occasion for rescission as there would be nothing to rescind. Security Sav. Bank v. Sturtz, 196 Iowa, 1128, 196 N. W. 3; Exchange State Bank v. Buckley (Iowa) 194 N. W. 949; Kuehl v. Parmenter (Iowa) 192 N. W. 429.

Damage is not presumed. No presumption of damage arises from a representation proved to be false. 27 C. J. p. 49; Sheets v. Christie (Iowa) 117 N. W. 29.

The burden is on the party alleging that the fraud was an actionable nature and not for instance a mere estimate of future expenses instead of definite and positive statement covering a past period. 27 C. J. p. 47, § 174.

Defendant must also prove knowledge of falsity at the time of the making of the statement. The law raises no presumption of knowledge from the mere fact that the representation is false. 27 C. J. p. 48, § 177.

*Chas. S. Ego,* for respondent.

BIRDZELL, J.   This action was tried in the county court of Ransom County and resulted in a verdict in favor of the plaintiff for the amount of the note sued on, which verdict, on motion, was set aside and judgment was entered for the defendant.   The plaintiff sues as the owner and holder of a note for $102.00, which was executed by defendant, payable to the Publishers National Service Bureau on November 1, 1920.   Upon the trial the plaintiff produced the note, and upon proof of the defendant's signature and after offering evidence of its purchase by the plaintiff, introduced the note in evidence.   The note bears the following indorsement: Publishers National Service Bureau, underneath which is written W. G. Tesler.   When the note was introduced the following objection was made:

"The defendant objects to the reception of Exhibit D (the note) in evidence, upon the ground that it is incompetent; and objects further to the reception in evidence of the indorsement appearing upon the back of it, for the reason that it is, in the present state of proof, incompetent, irrelevant and immaterial, no proper foundation has been laid, in that no proof of the authority of the agent to indorse has been offered."

The court ruled:

"Objection overruled as to the introduction of the face of the note; sustained as to the indorsement; on the theory that the evidence is not sufficient to show the indorser was authorized to make the indorsement."

The defendant's attorney stated:

"The objection does not go to the specific fact that no evidence has been offered that the signature of W. G. Tesler is not the genuine sig-

nature of W. G. Tesler, but does go to the fact that no competent proof has been introduced to show the authority of the agent whose purported signature appears thereon to indorse negotiable paper on behalf of the corporation."

The court likewise excluded evidence which was offered to establish that the plaintiff had paid for the note by issuing two drafts representing the aggregate sum of a large number of notes of which it claims to be the holder through the same transaction. We are unable to find in the record where the court admitted any evidence of the authority of W. G. Tesler to indorse paper of the Publishers National Service Bureau. The record shows that Tesler was a bookkeeper for the payee and that possibly he might have acted in some official capacity for the company. The respondent contends that no evidence of authority on his part to transfer title to the paper of the bureau would be legally sufficient unless it were in writing, and it is apparent from the record that the trial court supported the respondent's contention in this respect. It was, of course, incumbent on the plaintiff to prove its title. Citizens' State Bank v. Skeffington, 50 N. D. 494, 196 N. W. 953. In the view we take of this case, the only question for consideration is whether or not such authority must be in writing. The respondent relies upon certain sections of the Compiled Laws of 1913, providing, in effect, as follows: § 6915, Comp. Laws 1913 provides that an instrument payable to order is negotiated by the indorsement of the holder completed by delivery. Section 6916, Comp. Laws 1913 provides that the indorsement must be on the instrument itself or on a paper attached thereto. Section 6904, Comp. Laws 1913 (§ 19; Uniform Negotiable Instruments Law) provides that the signature of any party to a negotiable instrument may be made by an authorized agent, that no particular form of appointment is necessary and that the authority of the agent may be established as in other cases of agency. Section 6330, Comp. Laws 1913 provides that an oral authorization is sufficient for any purpose, "except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." It is said that since the indorsement is necessary to transfer title and since it must be written upon the instrument or upon a paper attached thereto, the authority of the agent to attach it must be in writing because of the exception quoted from § 6330. In

51 N. D.—37.

this connection, counsel cites, in support of his contention, State Bank
v. Weeks, 45 S. D. 639, 189 N. W. 941, in which the Supreme Court
of South Dakota holds specifically (page 942) "the indorsement of
commercial paper being an act that must be done in writing, the au-
thority to perform such act must be conferred by written authority.
Revised Code 1919, § 1723."

Before proceeding to a consideration of the argument based upon
our statutes, we may well note wherein the South Dakota case is not in
point. The case clearly turned upon § 19 of the Negotiable Instru-
ments Act, as adopted in that state, § 1723 of the Revised Codes of
South Dakota 1919. The section of the Negotiable Instruments Law,
as there adopted, was modified to read as follows:

"The signature of any party may be made by an agent duly author-
ized in writing. No particular form of written appointment is neces-
sary for this purpose."

The section as originally drafted and as adopted in this state (Nego-
tiable Instruments Act, § 19, Comp. Laws 1913, § 6904) reads:

"The signature of any party may be made by a duly authorized
agent. No particular form of appointment is necessary for this pur-
pose; and the authority of the agent may be established as in other
cases of agency."

Under the South Dakota statute, therefore, it is clear that a princi-
pal could not be bound by an indorsement unless the agent's authority
to indorse were in writing, and that under the original section, standing
alone, parol authority would be sufficient. Hence, the South Dakota
case which merely applied the peculiar statute existing in that state is
not in point here.

If parol authority to indorse be legally insufficient, it must be so by
virtue of § 6330, Comp. Laws 1913, which reads:

"An oral authorization is sufficient for any purpose, except that an
authority to enter into a contract required by law to be in writing can
only be given by an instrument in writing."

One of the first requisites of a negotiable instrument is that it must
be in writing and be signed by the maker or drawer (Uniform Ne-
gotiable Instruments Law, § 1, Comp. Laws 1913, § 6886); and it
is elementary that no one is liable upon a negotiable instrument, whose
signature does not appear thereon (Negotiable Instruments Law, § 18.

Comp. Laws 1913, § 6503). But § 19 of the Negotiable Instruments Act, § 6904, Comp. Laws 1913, provides that the signature may be made by a duly authorized agent, and this court has held, in construing this section, that a corporation might be bound as a party to a negotiable instrument where it was executed by an agent in whom it had vested *ostensible* authority. Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, 150 N. W. 736. Recognition of the legal sufficiency of an ostensible authority negatives the contention of the respondent that only written authority is sufficient. The argument of the respondent treats the Negotiable Instruments Law, in its requirements respecting the form of the instrument and the signatures, as quite analogous to the statute of frauds, yet it is apparent that the analogy fails in that there is no provision of the act which seeks to render invalid or unenforceable, as a simple contract, any contract respecting the obligations of a negotiable instrument or its transfer on account of the fact that such contract rests in parol. The law of commercial paper is nothing more or less than a group of principles springing from current usages in transactions where written instruments are employed in commerce. Hence, the whole body of the law of negotiable instruments pre-supposes the existence of an instrument in writing, and it is not concerned with the sufficiency of a parol contract from a common law standpoint. Even in the Negotiable Instruments Act there is some recognition of the legal sufficiency of a common law contract and of one who sustains certain relations to commercial paper being bound without his having signed. For instance, § 49, Negotiable Instruments Act, § 6934, Comp. Laws 1913, says that where one transfers paper payable to order without indorsing it, the transfer vests in the transferee "such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferrer." There is no provision requiring such a contract of transfer to be in writing. From this it is apparent that the test of the transferee's right to enforce the instrument, where it has been transferred to him by one purporting to act for a corporation, is not the existence of a written authority to attach an indorsement. Rather, it is whether or not the one purporting to act had authority sufficient at common law to bind the corporation by his act of transfer.

Again, the analogy to the statute of frauds fails when other statutes

are considered and, on the contrary, we find express recognition of the legal sufficiency of a parol contract to transfer negotiable instruments. Section 6654, Comp. Laws 1913, enacts the requirement of the statute of frauds that a guaranty must be in writing, but § 6655, Comp. Laws 1913, says:

"A promise to answer for the obligation of another in any of the following cases is deemed an original obligation of the promisor and *need not be in writing;* . . .

"5. When the holder of an instrument for the payment of money upon which a third person is or may become liable to him, transfers it in payment of a precedent debt of his, or for a new consideration, and in connection with such transfer enters into a promise respecting such instrument." (Italics are ours.)

Hence, it will be seen, if the respondent's contention be granted it would result that a contract, which the statute of frauds says need not be in writing and which the Negotiable Instruments Act says shall entitle the transferee to an indorsement, would be, nevertheless, ineffectual where made by an agent, unless the authority of the agent be in writing. As the contract of transfer is valid without a writing, it follows that the statute relied upon by the respondent does not require the agent's authority to be in writing. We are of the opinion that counsel's argument confuses language which is definitional in character and largely descriptive of the form of subject matter upon which the Negotiable Instruments Act operates with statutes which are concerned with public policy and which, in an effort to prevent frauds and perjuries, require something more than a parol contract as a condition of legal liability. We are further of the opinion that § 6330, Comp. Laws 1913, where it speaks of the necessity for an agent's authority to be in writing to enable him to "enter into a contract required by law to be in writing" refers to contracts of the latter sort and not to the former. In other words, we are of the opinion that this statute applies to contracts which would be invalid as legal obligations unless evidenced by writing and not to contracts which are valid as legal obligations but only insufficient in form, possibly, to be governed by the Negotiable Instruments Act. It follows that the trial court erred in excluding evidence of the actual or ostensible authority of Tesler to transfer the note in suit to the plaintiff.

In view of the more extended opinion in the Skeffington Case, 50 N. D. 494, 196 N. W. 953, covering many of the features of this case, the facts and circumstances of both being almost identical, further discussion here is not required. As hereinbefore indicated, in the absence of proper proof of title, judgment can not properly be entered on the verdict. It follows from what has been said that a new trial must be had. It is so ordered.

BRONSON, Ch. J., and NUESSLE, JOHNSON, and CHRISTIANSON, JJ., concur.