No. 21,899.

SUSAN REYNOLDS, *Appellant,* v. THE NATIONAL BANK OF
COMMERCE, *Appellee.*

SYLLABUS BY THE COURT.

1. BANK DRAFT—*Wrongful Appropriation by a Husband of Proceeds of
   Draft Belonging to His Wife.* A finding that a wife had authorized
   her husband to have the proceeds of a draft placed to his credit, held
   to have been qualified by a further finding that such authority had
   been conferred by the delivery to him of the draft, which was made
   payable to the collecting bank, and therefore to have amounted to a
   mere conclusion of law; and further held, that the general verdict
   did not imply such a finding, because under the instructions it was
   authorized upon other grounds.

2. SAME. Where a person draws upon a debtor, the draft being ac-
   companied by the evidence of the debt and being made payable to a
   bank, the fact that the drawer places such instrument in the hands of
   her husband to be delivered to the bank does not protect it in using
   the proceeds for the husband's benefit, according to his direction,
   where he had in fact no authority to direct such disposition.

3. SAME. In the situation stated, the possession of the draft by the hus-
   band prior to its delivery to the bank was no evidence of his having a
   right to the proceeds, nor did it make competent his statements con-
   cerning it. The competent evidence held not sufficient to show *prima
   facie* that the wife actually authorized her husband to direct the pro-
   ceeds of the draft to be used for his own benefit, or that she had in-
   vested him with such apparent authority in that regard as to protect
   the bank in relying thereon.

Appeal from Sedgwick district court, division No. 2;
THORNTON W. SARGENT, judge. Opinion filed February 8,
1919. Reversed.

*Henry Lampl, Thomas C. Wilson, Jean Madalene,* and
*Charles B. Hudson,* all of Wichita, for the appellant.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey,* and *W.
F. Lilleston,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: Susan Reynolds, the widow of John Reynolds,
brought an action against the National Bank of Commerce, of
Wichita, for $1,380.61 which she alleged to be due on account

of a collection made for her. The bank answered in effect that the plaintiff's husband had brought to it a pass book of an eastern savings bank showing that sum to her credit, with an order for its payment to the defendant, signed by the plaintiff, and had directed the proceeds to be credited to his account; and that the money had been collected and credited to the plaintiff's husband, canceling an overdraft, the balance having been checked out by himself and his administrator. A verdict was returned for the defendant, and the plaintiff appeals.

The burden of proof was held to be upon the defendant, in whose behalf evidence was produced to this effect: Reynolds had carried a checking account in the bank for some years. His wife had never done any business with it. The cashier had known her for about a year. The receiving teller did not know her, but knew that Reynolds had a wife and that she lived in Wichita. About February 12, 1917, this teller called Reynolds' attention to an overdraft of $514 and asked to have it made good. Reynolds said that he would have it fixed up in a few days by a transfer of money from the east. About February 21, he brought in the pass book referred to, with an order signed by his wife reading as follows:

"Treasurer of the Connecticut Savings Bank, New Haven, Conn., pay to the Nat'l. Bank of Commerce, Witchita, Kan., what may be due on my deposit book No. 67,331.          Mrs. Susan Reynolds.

"Witness, John Reynolds."

Reynolds at first asked credit for the amount shown by the book, but the teller explained that as the interest had not been computed the bank would take it only for collection. He then requested that after collection the proceeds should be credited to his account, and this was done, the bank not knowing that Mrs. Reynolds claimed to own the money.

The plaintiff testified that she gave no one any authority to have the money deposited to the credit of her husband; that on May 5 (four days after his death) she went to the bank and asked for it, and was told it had been transferred to her husband's account; that she asked how that could be done without her knowledge, and was told that it was customary; and that she had not previously known of the money having been paid.

1. The defendant argues that the jury found that the plaintiff had authorized her husband to have the proceeds of the

collection placed to his credit; that there was both direct and circumstantial evidence to support this finding; and that, therefore, this question of fact is settled in its favor, thus requiring an affirmance of the judgment. While such a finding was made, it was qualified by the statement that the authority referred to was given by the delivery of the pass book and order, so that it amounted merely to a conclusion of law. The general verdict does not imply a finding to the effect stated, for the question of the actual authority of the plaintiff's husband.was not submitted to the jury as one of the matters upon which a verdict against the plaintiff necessarily depended. An instruction was given to the effect that if the plaintiff delivered the pass book and order to her husband to be delivered to the bank she thereby impliedly constituted him her agent, not only to make such delivery, but to give directions concerning the disposition of the proceeds, and that if he directed them to be placed to his credit, he did so as the implied agent of the plaintiff, and the bank was authorized to carry out such directions, even although the plaintiff did not in fact expressly authorize such disposition of the money. Substantially the same theory was embodied in a further instruction stating that the bank had a right to presume that the plaintiff's husband in giving directions as to the disposition of the proceeds was acting within the scope of his apparent authority, and if the bank, without notice to the contrary, carried out his directions and placed the money to his credit, it could not be held liable for having done so. From this statement it is obvious that a verdict for the plaintiff was required by a favorable answer to the three questions: (1) whether the plaintiff had given the pass book and order to her husband for delivery to the bank; (2) whether her husband had directed the money to be placed to his credit; and (3) whether the bank followed his directions without notice of any lack of authority on his part. There was no controversy as to the first question, and no conflict of evidence on the second or third, unless such as might arise from conflicting inferences' with respect to the last matter. These issues were largely formal, and if the instructions referred to were correct, the defeat of the plaintiff's claim became practically a matter of course.

2. That question resolves itself into this: Where a person draws upon a debtor, the draft being accompanied by the evi-

dence of the debt and being made payable to a bank, does the fact that the drawer places such instrument in the hands of an agent to be delivered to the bank protect the bank in using the proceeds for the agent's benefit, according to his direction, notwithstanding he had in fact no authority to direct such disposition? On this phase of the matter we do not regard it as material whether the drawer and agent were wife and husband. Where there were other circumstances from which authority to appropriate the proceeds could be inferred, that relationship might have weight in interpreting them, but its existence does not create agency, nor in itself constitute evidence of agency. In *Moody v. Stubbs,* 94 Kan. 250, 146 Pac. 346, it was held that where a wife executed a deed intended as a mortgage to secure a loan to be made to the husband by the grantee, and intrusted it to the husband for delivery, she could not, in an attack by her upon the validity of the lien created by the deed, be heard to dispute the terms of repayment agreed to between her husband and the grantee (notwithstanding they differed from what she had understood they were to be), on the principle that she had voluntarily placed her husband as her agent in such a situation that the grantee was justified in supposing that he was authorized to deliver the deed upon such terms. We do not regard that decision as controlling here, first, because there the deed was used for the general purpose for which it had been intrusted to the agent, the departure from instructions being merely with respect to a matter of detail, while in the supposed case the agent diverted the property of his principal to his own use; and in the second place, because placing a deed in the hands of an agent for delivery to the grantee is not entirely analogous, with respect to the authority to be implied, to giving an agent a draft upon a debtor to be delivered to the payee for collection.

We do not think that one who is intrusted with the delivery to a bank of a draft (or other instrument calling for the payment of money) payable to it, has implied authority to receive the proceeds or to direct their use for his own purposes. The fact that the instrument is so drawn or indorsed as to make it payable specifically to the bank, seems to indicate affirmatively that the messenger is not vested with the ownership or control of the proceeds. It follows that the instructions under consideration require the setting aside of the verdict.

3. The plaintiff contends further, that her demurrer to the plaintiff's evidence should have been sustained—that the evidence had no tendency to show either an actual authority on the part of her husband to appropriate the proceeds of the draft, or the existence of such conditions as to justify the bank in acting upon the belief that such authority existed.

Nowithstanding the general rule that the declarations of an agent are not competent to establish the fact or the scope of his agency, it is argued in behalf of the defendant that the statements of Reynolds to the bank were admissible to show his authority, on the ground that one in possession of property is presumed to be the owner, and that his declarations are competent for the purpose of showing his interest or claim to it. Reynolds had no possession of the money, and had not even an apparent right to its possession. His possession of the pass book and draft gave him no color of right to the proceeds. It is true that the mere possession of even an unindorsed promissory note payable to a person named is some evidence of ownership as against the maker (*O'Keeffe v. National Bank,* 49 Kan. 347, 30 Pac. 473; 3 R. C. L. 981, note 7), who of course could have no claim of ownership himself. But possession of such a note is not evidence of ownership against the payee (*Durein v. Moeser, Adm'x,* 36 Kan. 441, 13 Pac. 797; Note, 50 L. R. A., n. s., 588; 3 R. C. L. 981, 982, note 10). As against the maker it may be presumed that the possession of the holder is rightful and indicates that the payee has transferred it to him without indorsement—by an oral assignment. But such a presumption is not to be indulged as against one who on the face of the paper appears to be entitled to its proceeds. On a question of ownership as between different claimants the story told by the writing prevails over the mere fact of possession. That reasoning applies here. Regarding the draft as property in the sense in which a promissory note is property, the written evidence established the defendant's legal title to the proceeds, and the question for whom it was to hold them was not affected by the hands through which the instrument had passed, since the writing showed the character of the transaction. It disclosed a purpose to transfer the funds from the eastern bank to the defendant. The manual possession of the order in the process of its delivery to the payee named was no evi-

dence-of a beneficial interest in the bearer. Nor do we consider the possession, of the pass book and draft such a possession of property as to make competent the statements of the holder regarding the ownership of the proceeds.

It is further contended that Reynolds' right to the money collected was inferable from these circumstances: The plaintiff had never done business with the bank. She knew the money which in the savings bank had been drawing 4 per cent interest would earn nothing after its transfer to the defendant bank. She made no statement as to why she wanted the transfer made, or what instructions she gave her husband regarding it. She made no inquiry with regard to the collection and asserted no claim to the money until after her husband's death some seventy days later. So far as concerns the plaintiff's omission to testify concerning her transactions with her husband, it would seem that she was an incompetent witness (Civ. Code, § 320, Gen. Stat. 1915, § 7222), although her denial of having authorized him to use the proceeds may have opened the way for a cross-examination on the subject. (*Plowman v. Nicholson,* 81 Kan. 210, 105 Pac. 602, 106 Pac. 279.) We discover in the matters referred to no substantial evidence that the plaintiff actually gave her husband authority to use the proceeds of the collection.

A final contention is that, at all events, this evidence, coupled with the condition of Reynolds' bank account, the demand made upon him to make good the overdraft, and his promise to do so by the transfer of funds from the east, warranted a finding that the plaintiff had voluntarily created a situation in which the bank was naturally and justifiably led to believe that her husband had authority to use her money to replenish his bank account. The plaintiff admittedly sent the book and draft to the bank by her husband to have the amount due her collected. That she did more than this is not indicated by anything in the evidence, aside from the statements and conduct of her husband, and for these she is not shown to have been responsible. The defendant had notice, by the language of the draft, that the plaintiff had authorized the bank, and no one else, to demand and receive from the savings bank the amount shown by the pass book, nothing being indicated as to what it was to do with the money beyond holding it subject to her order. That it

believed the purpose of having the collection made to be to strengthen Reynolds' credit appears to have been due rather to its confidence in him than to any act of the plaintiff which it knew and relied on.

The judgment is reversed, and the cause is remanded with directions to render judgment for the plaintiff.