# FIRST NATIONAL BANK OF BUFFALO, NORTH DAKOTA, a Corporation, Appellant, v. A. BRATSBERG, Respondent.

### (204 N. W. 665.)

**Bills and notes — after indorsee has established prima facie case, defendant may introduce evidence that note was without consideration, and fraudulently negotiated, without showing that plaintiff knew such facts.**

1. In an action by a bank, which claims to be an indorsee and holder in due course of a negotiable note payable to order, where the defendant by his answer has presented the issue that the plaintiff is not a holder in due course; that the note was without consideration, and negotiated by the payee in breach of faith and under circumstances amounting to a fraud, and that the plaintiff acquired it with notice of these facts, it is *held:*

When the plaintiff has established a prima facie case, and the burden has shifted to the defendant, the latter may introduce evidence to show that the note was without consideration, and negotiated in bad faith and under circumstances amounting to a fraud, without showing that the plaintiff had knowledge of such facts.

**Bills and notes — on showing of fraud, plaintiff has burden to prove that he or some one under whom he claims, was "holder in due course".**

2. When defendant has shown fraud in the inception of the instrument, or negotiation by the payee in breach of faith or under circumstances amounting to a fraud, the burden is shifted to the plaintiff to prove (Comp. Laws, 1913, § 6944) that he, or some one under whom he claims, acquired title as a holder in due course; that is, that he acquired the title (1) before maturity, and without notice that it had been previously dishonored, if such was the fact; (2) in good faith and for value; (3) without notice of any infirmity in the instrument or defect in the title of the person negotiating it. Comp. Laws, 1913, § 6837.

**Bills and notes — burden on plaintiff to establish truth of allegation relating to indorsement and transfer; that note had name of payee indorsed on back does not establish fact that payee indorsed it.**

3. Issue having been joined on the allegation in the complaint relating to the indorsement and transfer of a note, the burden is on the plaintiff to establish the truth of such allegation by evidence. The mere fact that the note, when offered in evidence, had indorsed upon its back the name of the payee, does not establish the fact that the payee indorsed the same; there must in addition thereto be proof that such name is the indorsement of the payee.

Note.—(2) Burden of proof to negative fraud in inception of note, see **3 R. C. L.** 1042; 1 R. C. L. Supp. 956; 4 R. C. L. Supp. 233; 5 R. C. L. Supp. 215.

**Bills and notes — indorsee held not entitled to verdict as matter of law when one participant in transaction not called.**

4. When at the close of all of the testimony, the evidence on the part of the defendant tends to show that the note was negotiated in breach of faith and under such circumstances as amounted to a fraud; and the evidence on the part of the plaintiff bank shows that the note was obtained before maturity and for value; that the cashier and assistant cashier of the bank were present and participated in, or had knowledge of the transaction, in which it was acquired; and the assistant cashier, alone is called as a witness as to the good faith of the bank, and absence on its part of notice of infirmity in the instrument or defect of title of the person negotiating it, and no explanation is made of the failure to call the cashier, the plaintiff is not entitled to a verdict as a matter of law.

Opinion filed May 4, 1925. Rehearing denied June 17, 1925.

Bills and Notes, 8 C. J. § 1292 p. 984 n. 60, p. 986 n. 77; § 1316 p. 1010 n. 53; § 1363 p. 1054 n. 71; § 1376 p. 1063 n. 67.

Appeal from the District Court of Ward County, *Moellring,* J.

Plaintiff appeals from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

Affirmed.

*Palda & Aaker* and *C. E. Brace,* for appellant.

The holder of collateral security is entitled to sue and collect thereon and apply the proceeds in payment of the principal debt. Farmers Bank v. Riedlinger, 27 N. D. 318, 146 N. W. 556.

Where an officer of a bank negotiates to it, acting himself as the sole representative of the bank a note given to himself upon condition, the bank is chargeable with his knowledge. Bank of Blaine v. Blake, 60 Fed. 78.

A bank is chargeable with knowledge of facts which would defeat its action in a case where its cashier knew of such facts, but he acted as the sole representative of the bank in the transaction. Emerado Elev. Co. v. Farmers Bank, 20 N. D. 270, 29 L.R.A.(N.S.) 567, 127 N. W. 522.

An instruction will be deemed prejudicial, as tending to mislead the jury, if there is no issue in the case upon which to base it, although it may be correct as an abstract proposition of law. Barker

v. Coats, 34 S. D. 291, 148 N. W. 134; Hagen v. Townsend & White, 27 S. D. 457, 131 N. W. 512.

Instructions should be confined to the issues presented by the evidence, and instructions on issues or matters not warranted by the evidence and which are calculated to mislead the jury, constitute reversible error. Foster v. Dwire (N. D.) 199 N. W. 1017.

A legal presumption exists that the indorsee purchased the same in due course of business, and this presumption continues, unless his title is shown to be defective through fraud or other reason. Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614.

Mere possession of a negotiable promissory note, payable to order, does not entitle the possessor to enforce it against the maker without proof of the indorsement or transfer by the payee, if such indorsement and transfer are denied by the maker, although a purported indorsement appears on the instrument. Vickery v. Burton, 6 N. D. 245, 251, 69 N. W. 193; Capitol Hill State Bank v. Rawlins Nat. Bank, 24 Wyo. 423, 11 A.L.R. 937, 160 Pac. 1171.

Want of consideration is no defense since a mere accommodation note is good in the hands of an indorsee in good faith and an accommodation note is good in the hands of a holder for value even with knowledge that the note is an accommodation note. 3 R. C. L. 1068, 1137.

An accommodation note is a loan of the maker's credit without restriction as to the manner of its use. 3 R. C. L. 1137; Lord v. Ocean Bank, 20 Pa. 384, 59 Am. Dec. 728; Whelton v. C. M. & St. P. R. Co. (Iowa) 179 N. W. 140.

The pleadings in an action must outline some single definite theory upon which it is based, and the parties are bound by such theory. Baltimore & O. C. R. Co. v. Paul, 143 Ind. 23, 28 L.R.A. 216, 40 N. E. 519.

*Francis Murphy,* for respondent.


CHRISTIANSON, Ch. J. This is an action upon a promissory note in the sum of $500.00 executed and delivered by the defendant, to one R. T. Bristol. The note bears date May 23rd, 1922, and is payable November 21st, 1922.

In its complaint the plaintiff alleges that "before the maturity of

said note the payee therein for value assigned, transferred and delivered" the same to the plaintiff; and that "the plaintiff is still the owner and holder" thereof and that "no part thereof has been paid."

The answer admits the execution of the note; but alleges that it was given solely for the accommodation of the payee named therein; that defendant received no consideration therefor; that immediately prior to the execution of the note, the payee therein informed defendant that he and others were organizing a corporation for the purpose of writing insurance in this state and elsewhere; that he desired defendant to act as agent for such corporation; that in order to qualify as such agent, and solely as a matter of form defendant must become a stockholder in such corporation; that the note in suit was executed in order to carry out such proposed arrangement, and with the express understanding that the note should never be paid, but should be held until the agency arrangement terminated and then returned.

In plaintiff's brief the facts as established by the evidence in this case are in part summarized thus:

"On or about May 3rd, 1922, the defendant executed and delivered to one, Bristol, the payee therein named, the note in suit, and the defendant has paid nothing on the note. This note was given for stock in a corporation known as Dakota Underwriters Company. The note was given and the stock issued to qualify the defendant as an agent of said corporation. The agency contract was to expire November 1st, 1922, and the stock and note were to be then surrendered and the agency terminated. Defendant soon after the making and delivery of the note notified Bristol that he could not act as agent and he considered the deal cancelled. Defendant, however, held the stock till in the fall of 1922. The note was endorsed by Bristol and delivered to plaintiff about June 5th or 6th, 1922, long before the note was due, as collateral to a loan made by the bank to Bristol and the Dakota Underwriters Company."

Aside from the note and certain documentary evidence the evidence on behalf of the plaintiff bank consisted of the testimony of one Peterson. He testified that he was assistant cashier of the plaintiff bank at the time the note in suit was taken as collateral for a loan made to the Dakota Underwriters Company and Bristol. He further testified:

Q. You say you were personally present at the time the transaction was made when the note Exhibit 1 was acquired by the bank?

A. Yes, sir.

Q. Who else was there?

A. Mr. Moore.

Q. Anyone else?

A. The clerks in the bank. But they were not parties to it. . . .

Q. At the time the deal took place were you not assistant cashier?

A. I believe I was.

Q. You have since become vice president?

A. Yes sir.

Q. But you were assistant cashier and Mr. Moore was cashier at this time?

A. Yes sir.

Q. In other words he was your superior at that time and you have changed places since?

A. Yes sir. He is still my superior though.


Peterson further testified that Mr. Moore was interested in the Dakota Underwriters Company as a stockholder. Moore did not testify. There was no explanation of his failure to do so, and there is nothing to indicate whether he did or did not have any personal knowledge or notice of the facts and circumstances attendant upon the execution and delivery of the note.

Bristol, the payee in the note, did not testify and the only evidence relating to the consideration for the note and the condition attached to the execution thereof is the testimony of the defendant. The defendant testified that Bristol telephoned him (defendant) regarding the organization of the Dakota Underwriters Company, and stated that he (Bristol) desired defendant to act as agent in writing insurance in some six or seven counties; that later defendant went to Fargo and talked the matter over with Bristol with the result that he (defendant) entered into the arrangement with Bristol, and executed and delivered the note in suit; that the note was executed with the specific understanding that $500.00 of capital stock of the Dakota Underwriters Company should be issued to the defendant; that the note should be held, or placed with some bank in escrow, and returned to

defendant on November 1st,—at which time the insurance agency contract would expire; that immediately after this transaction occurred the defendant went to Minneapolis, where he submitted the matter of the proposed arrangement to the vice president of some insurance "conference" to ascertain whether he (defendant) might with propriety carry out the proposed arrangement with the Dakota Underwriters Company and was advised by such vice president that he believed that it would not be well for defendant to do so; that defendant thereupon notified Bristol that he did not care to continue the arrangement or act as agent for the Dakota Underwriters Company and requested Bristol to return the note; that in reply Bristol wrote a letter to the defendant saying, "that the note would be sent back immediately; that he had no desire to hold my note or to hold me as a stockholder if it was not acceptable to me." This testimony on the part of the defendant is not disputed. The case was submitted to a jury. A verdict was returned in favor of the defendant. Plaintiff moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and plaintiff has appealed from the order denying such motion.

Error is assigned on rulings in the admission of evidence; on the instructions to the jury; and on the denial of the motions for a directed verdict, and for judgment notwithstanding the verdict or for a new trial.

The plaintiff contends: (1) that the defendant should not have been permitted to adduce evidence relating to the conditions attached to the execution of the note; (2) that upon the evidence the plaintiff must be held to be a holder in due course as a matter of law; and, (3) that the instructions bearing on the question of a holder in due course are erroneous.

The following provisions of the Negotiable Instruments Law are applicable to the questions raised:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. . . ." Comp. Laws, 1913, § 6943; Neg. Inst. Law, § 58.

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior

parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." Comp. Laws, 1913, § 6942; Neg. Inst. Law, § 57.

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." Comp. Laws, 1913, § 6944; Neg. Inst. Law § 59.

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." Comp. Laws, 1913, § 6940; Neg. Inst. Law, § 55.

"A holder in due course is a holder who has taken the instrument under the following conditions:

1. That it is complete and regular upon its face.

2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

3. That he took it in good faith and for value.

4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Comp. Laws, 1913, § 6937; Neg. Inst. Law, § 52.

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounts to bad faith." Comp. Laws, 1913, § 6941; Neg. Inst. Law, § 56.

By the rule of the law merchant, incorporated in § 6944, supra, the mere possession of a negotiable instrument by the indorsee, where an indorsement is necessary, imports prima facie that he is the lawful owner; and that he acquired it before maturity, bona fide, for value

in the usual course of business, and without notice of any circumstances impeaching its validity. 3 R. C. L. pp. 1037, 1038. And the production of a negotiable instrument, properly indorsed, accompanied by proof of the execution and indorsement of such instrument, if the same be traversed, establishes a prima facie case, and entitles plaintiff to recover if the defendant does not rebut it. 3 R. C. L. pp. 1037, 1038; Pierson v. Huntington, 82 Vt. 482, 29 L.R.A.(N.S.) 695, 137 Am. St. Rep. 1029, 74 Atl. 88. But this prima facie case is overcome "when it is shown that the title of any person who has negotiated the instrument is defective" (§ 6944, supra). That is, when it is shown that the payee named in, and who negotiated, the instrument, "obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration," or that he negotiated "it in breach of faith, or under such circumstances as amount to a fraud." § 6940, supra. When such proof has been introduced by the defendant the burden is shifted to the plaintiff, that is the burden is cast "on the holder to prove that he or some person under whom he claims acquired the title as holder in due course." § 6944, supra.

According to the plain terms of the statute the maker of a negotiable instrument, who is sued by one who claims to be the holder thereof in due course, may rebut the prima facie case established by the production of the instrument and proof of the execution and negotiation thereof by showing that the payee named in the note obtained the same or the signature of the maker thereof by fraud, or that such payee negotiated the instrument "in breach of faith, or under such circumstances as amount to a fraud." Inasmuch as the statute permits such facts to be shown in rebuttal of the plaintiff's prima facie case, obviously evidence tending to establish such facts is admissible in a case where the issue whether plaintiff is a holder in due course is duly tendered. 5 Uniform Laws, Anno. p. 282; McNight v. Parsons, 136 Iowa, 390, 22 L.R.A.(N.S.) 718, 113 N. W. 858, 125 Am. St. Rep. 265, 15 Ann. Cas. 665. In this case the issue was tendered. The answer not only traversed the paragraphs of the complaint which alleged plaintiff to be a holder in due course; but it averred the circumstances under which the note was executed, and the conditions attached to the delivery thereof—facts and circumstances which ren-

dered the title of the payee defective—; and it further averred that the plaintiff bank took the note with knowledge of such facts. The testimony of the plaintiff tended to show that the note in suit was negotiated in breach of faith, or under such circumstances as amounted to a fraud. 5 Uniform Laws Anno. pp. 283 et seq.; McNight v. Parsons, supra; and authorities cited there.

And, in our opinion, the plaintiff has not satisfied the burden cast upon it by the statute to such degree that it can be said that the only inference reasonably to be drawn therefrom is that plaintiff is a holder in due course. In this case there was no specific or positive testimony that the name on the back of the note was placed there by the payee, or by his authority. It is indeed rather doubtful if there is any competent evidence of the indorsement. But, viewing the evidence in the light most favorable to the plaintiff, the question of indorsement was one for the jury. This being so, it necessarily follows that plaintiff was in no event entitled to a directed verdict. Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; Embden State Bank v. Schulze, 49 N. D. 777, 193 N. W. 481; McLeod State Bank v. Vandemark, 51 N. D. 573, 200 N. W. 42.

The question of indorsement was not, however, the only question for the jury. The testimony of plaintiff's witness, Peterson, is, we think, clearly susceptible of the construction that Moore as well as Peterson was present and participated in the transaction in which the note was acquired by the bank. And according to Peterson's testimony Moore was the cashier and Peterson's superior officer. Moore did not testify and his absence was in no manner explained. So far as the evidence discloses he was just as available as Peterson. In these circumstances the question whether the bank was a good faith purchaser was for the jury. 5 Uniform Laws Anno. p. 290; First Nat. Bank v. Andersen, 144 Minn. 288, 175 N. W. 544; Des Moines Sav. Bank v. Arthur, 163 Iowa 205, 143 N. W. 566, Ann. Cas. 1916C, 498; Phelps v. Williams (Neb.) 202 N. W. 415.

It is also contended that the trial court erred in giving the following instructions, to-wit:

"I charge you further that in order to constitute the plaintiff as a holder in due course it must also appear that the note was indorsed by the payee Bristol, before the transfer, and the mere fact that Bristol's

name appears on the back of such instrument is not sufficient of itself to establish indorsement, but the same must be proven as his indorsement by competent evidence in the case."

The contention is without merit. The instruction was a correct statement of the law. Vickery v. Burton, 6 N. D. 245, 251, 69 N. W. 193; Embden State Bank v. Schulze, 49 N. D. 777, 193 N. W. 481; McLeod State Bank v. Vandemark, supra. And, under the evidence in this case, it was for the jury to determine whether the name on the back of the note was the indorsement of the payee.

Error is also assigned on the following instructions:

"I charge you further, that the title of Bristol the payee in this note, is defective if it appears that he obtained the same from the defendant by fraud, or if he negotiated it to the plaintiff in breach of an agreement with the defendant not to negotiate the same."

"And, I charge you further that if you find from the evidence that the title of Bristol to the note in question was defective as herein defined, then the burden is upon the holder, the plaintiff, to prove by a fair preponderance of the evidence that it acquired the note signed by the defendant in due course as defined in these instructions."

"I charge you further that if you find from the evidence that the title of the payee in the note, Bristol, is defective, as I have defined the same, then the burden is on the plaintiff in this case to prove that it acquired the note sued on in this action for value, before maturity without notice of any infirmity in the instrument or defect in the title of payee, Bristol, and in good faith."

The instructions are correct. They state the law as contained in the Negotiable Instruments Law of this state. See also First Nat. Bank v. Carroll, 46 N. D. 62, 179 N. W. 664; Merchant's' Nat. Bank v. Reiland, 51 N. D. 287, 199 N. W. 947.

This disposes of all assignments worthy of consideration. The remaining assignments are either controlled by those disposed of, or are so obviously without merit as to require no consideration.

Affirmed.

JOHNSON, BURKE, BIRDZELL, and NUESSLE, JJ., concur.