Manhattan Chamber of Commerce v. Gallagher.

---

No. 27,221.

MANHATTAN CHAMBER OF COMMERCE, *Appellee* and *Appellant,* v. CLIFFORD GALLAGHER, *Appellant* and *Appellee.*

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Possession of Unindorsed Note as Prima Facie Evidence of Ownership.* The rule existing in this jurisdiction previous to the adoption here of the uniform negotiable instruments act, that a plaintiff in an action against the maker upon a promissory note which is payable to the order of another and has not been indorsed, makes a *prima facie* case of ownership by showing possession of it, is not changed by that enactment.

2. EVIDENCE—*Contemporaneous Oral Agreement Affecting Writing.* The enforcement of a note given by a student in exchange for money furnished to enable him to continue his course is not to be defeated by showing an oral agreement at the time of its execution that it need not be paid, its purpose being to conceal the fact of gratuitous aid having been given him because of his skill as an athlete, in violation of an intercollegiate agreement.

3. EXEMPTIONS—*Automobile Used in Trade—Evidence.* It is held that no error is shown in the overruling of a motion to release funds from garnishment on the ground that they were the proceeds of an automobile used by the owner in his business as athletic director and referee, and intended to be used for the purchase of another for the same purpose.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed March 12, 1927. Affirmed in part and reversed in part.

*L. A. Hasty, Robert R. Hasty* and *George E. Hasty,* all of Wichita, for the appellant and appellee.

*R. P. Evans* and *George Clammer,* both of Manhattan, for the appellee and appellant.

---

Bills and Notes, 8 C. J. pp. 1003 n. 86, 1004 n. 88, 1007 n. 21; 3 R. C. L. 981. Evidence, 22 C. J. pp. 1089 n. 31, 1091 n. 39. Garnishment, 28 C. J. p. 356 n. 46; 2 A. L. R. 827; 28 A. L. R. 74; 11 R. C. L. 514.

The opinion of the court was delivered by

MASON, J.: The Manhattan Chamber of Commerce sued Clifford Gallagher upon five causes of action, each based upon a note signed by him. Upon the first four a demurrer to the evidence was sustained, final judgment being rendered in favor of the defendant. Upon the fifth judgment was directed for the plaintiff. Both parties appeal.

Of the four notes on which no recovery was allowed one was made payable to F. C. Frank, as chairman of a student loan fund, and the other three to F. W. Jenson, as acting chairman of such fund. None of them was indorsed and there was no evidence other than the fact of the possession of the note introduced showing its transfer to the plaintiff. The case as to these four notes turns upon whether the possession by some one else of an unindorsed note made payable to the payee or order is *prima facie* evidence of ownership as against the maker. Before the passage of the uniform negotiable instruments act there was a difference of judicial opinion on the question. This court held that such possession raised a presumption of ownership. (*O'Keeffe v. National Bank,* 49 Kan. 347, 30 Pac. 473.) Since that enactment we have applied the same rule, but without making reference to the statute. (*Reynolds v. Bank,* 104 Kan. 215, 178 Pac. 605; *Nuzman v. Bennett,* 115 Kan. 766, 224 Pac. 900.) The conflict that existed before the adoption of the negotiable instruments act still continues, but we think as a result rather of the different views taken of the general question than of a supposed change brought about by the statute, although in some instances the doctrine that there is no presumption of ownership from such possession is undertaken to be supported by its language.

This court is already so fully committed on the subject as to make a change of ruling inadvisable unless for the most cogent reasons. The question has to do rather with a general rule of procedure—of evidence or burden of proof—than with the qualities of negotiable instruments. Ordinarily possession of property, either real or personal, is regarded as some evidence of ownership. It is true a note on its face imports ownership in the payee, but the title has always been regarded as capable of passing without any writing and we do not interpret the negotiable instruments act as preventing this. We think the presumption should favor a rightful rather than

a wrongful possession of a note, although unindorsed and made payable to some one other than the possessor. On these grounds we adhere to the prior rulings of the court.

The question we are discussing is reviewed in Brannan's Negotiable Instruments Law, 4th ed., pp. 341-344, where cases prior and subsequent to that statute are cited, the conclusion reached being contrary to our own. Briefly stated the argument is this:

The possessor of an unindorsed note made payble to another is not a "bearer," because that term is used in the statute as meaning one in possession of a note payable to bearer; nor is he a "holder," because to be that he must be either the bearer or the payee or indorsee and possessor. (R. S. 52-102.) And while the statute expressly recognizes the transfer of title, without indorsement, of a note payable to the order of the payee, this is only where the transfer is for value, the burden of proving which should be on the transferee. (R. S. 52-420.)

To us a sufficient answer to this appears to be that the definitions of "bearer" and "holder" are of those terms as used in the act. One may be the possessor and owner of a note, competent to sue upon it, without being either a bearer or holder within the statutory definitions. The power of the payee of a note to transfer the equitable title by delivery without indorsement is not created by the statute just cited, which reads:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferrer; but for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." (R. S. 52-420.)

We read the section quoted not as granting a right of transfer, but as providing that such transfer, if made for value, shall entitle the transferee to a subsequent indorsement. No statute is needed to authorize the transfer of the equitable title to a note without writing any more than in the case of any other personal property. It exists because not forbidden. The plaintiff here is asking nothing by reason of the negotiable form of the notes. If they were non-negotiable the possession would be *prima facie* evidence of ownership under our early decision on the subject. It would be singular if the fact of their negotiability were to put the plaintiff at a disadvantage in attempting to enforce them.

It follows that the demurrer to the evidence upon the first four causes of action should have been overruled and judgment should have been rendered thereon for the plaintiff.

2. With respect to the fifth cause of action—upon a note made payable to the plaintiff—the defendant relied upon evidence tending to prove the following allegations of his answer, referring to notes in renewal of which those sued upon were given, and to these notes themselves:

"During all of the times referred to in plaintiff's petition the Kansas state agricultural college was a member of the Missouri Valley conference, an athletic organization, maintained by the major colleges and universities located in the Missouri valley, including the Kansas state agricultural college, at Manhattan, the Kansas university, at Lawrence, Kansas; Missouri university, Columbia, Missouri; Nebraska university, Lincoln, Nebraska, and various other schools of similar importance, and that said conference had a rule that no member thereof should use on any athletic team participating in any contest with any member thereof, any professional athlete, that is to say, that no athlete should be employed, either directly or indirectly to serve on any team. That the defendant herein was a member of the first team of football, as well as being a member of the track team, and participating in other athletic events in which the Kansas state agricultural college engaged. That it was to the advantage of the Kansas state agricultural college to maintain a first-class athletic department, by having on the various athletic teams students who were agile athletes and capable of winning honors for the Kansas state agricultural college. That defendant was an athlete of better than average ability, and because of his financial condition was about to leave the Kansas state agricultural college to seek employment. That as soon as this condition was learned, the athletic coach, Dutch Schultz, at said college, arranged with F. C. Franks, a merchant of Manhattan, Kansas, and W. M. Jardine, dean of the Kansas state agricultural college, to create a fund with which to pay the necessary living expenses of defendant and one Watson, another athlete in said school, in order that this defendant and Watson might be retained on the athletic teams of said school. That pursuant to this plan, funds were solicited from the business men and residents of Manhattan, Kansas, and in order to evade the rule of the Missouri Valley conference, prohibiting employment of athletes, either directly or indirectly, the funds so solicited were placed with the Manhattan chamber of commerce, the plaintiff herein, and the coach of the Kansas state agricultural college arranged with the plaintiff to give funds to this defendant and one Watson, as needed by them to pay their necessary living expenses. That pursuant to this arrangement the plaintiff gave certain funds to the defendant, and thereafter represented to this defendant that the written instruments set forth in plaintiff's petition should be given from time to time, as money was given to defendant, to protect the Kansas state agricultural college from exposure on violation of the rule of the Missouri Valley conference, above referred to.

"At the time of signing and delivering said notes, the plaintiff further represented that the signing of said instruments was for the protection of the plaintiff and the Kansas state agricultural college, and that said notes would not be binding on defendant, and that he would not be required to pay the money therein referred to, but that the repayment, if any, was to be within the discretion of the defendant; that is, the funds received by defendant were paid to him as a gift and not as a loan. That it was understood between the parties that if at any time the defendant felt able to return any of the funds so given to him, it was within his option to do so and plaintiff would be glad to receive the money.

"That thereafter, and some time during the latter part of December, 1921, and the first part of January, 1922, plaintiff wrote defendant, threatening to ·cause him considerable embarrassment in the community where he then lived, and with his employers, if he did not return some of the funds (given to him under the previous arrangement). That in order to prevent the embarrassment threatened by plaintiff, and for no other reason, and with no intent of admitting any legal obligation to repay (funds given to him) by plaintiff, the defendant gave the plaintiff the sum of approximately twenty-five ($25) dollars, a portion of which plaintiff appears to have credited on each of the written instruments set forth in plaintiff's petition, and without defendant's knowledge or consent."

The court rightly held that proof of these facts would not establish a defense, for the reason that to allow this would be to permit the defeat of the enforcement of a written contract by showing a contemporaneous oral agreement in direct conflict with its terms. (*Stevens v. Inch,* 98 Kan. 306, 158 Pac. 43; *Macksville State Bank v. Ehrlich,* 119 Kan. 796, 241 Pac. 462, and cases there cited.)

Although it does not affect the question of law involved, it should perhaps be said that while there was testimony tending to support the claim that the loan was made to the defendant with the understanding it need not be repaid, there was also testimony directly to the contrary. Evidence was given that such loans were to be repaid positively; that they were made out of a revolving fund raised by subscription, which was under the control of the Manhattan chamber of commerce, and was kept up through the payment of principal and interest by students to whom loans had been made; that only the defendant and one other student had failed in their payments; and that less than twenty per cent of the loans were made to athletes.

3. A garnishment summons was served in this case upon a bank which answered that it had money in its hands belonging to the defendant. The defendant (a married man) moved to dismiss the

garnishment on the ground that the money was the proceeds of theft insurance on an automobile which he had used in his business and which was necessary to its proper conduct; and that he intended to use the proceeds or a part of them toward buying another car for the same purpose. He testified that he had been athletic director at the Wichita high school and used the car in connection with that business; that he was paid for acting as referee at football games in other places and that he had used the car going from his home to the high school and return and in driving to other towns to referee games. The motion was denied, and the defendant complains of the ruling. The grounds of the ruling were not stated, and it may have been based upon the resolving of an issue of fact against the defendant. We hold that the evidence did not conclusively show exemption. The use of an automobile to carry the owner to and from his work seems hardly to constitute it an implement for the carrying on of his business, but that is a matter that need not now be determined.

The judgment is affirmed with respect to the fifth cause of action and the garnishment. As to the first four causes of action it is reversed, with directions to render judgment thereon for the plaintiff.

HARVEY, J., dissents from the first paragraph of the syllabus and the corresponding part of the opinion.