L. R. BAIRD, as Receiver of the Scandinavian American Bank of Fargo, N. D., a Banking Corporation, Appellant, v. GEORGE D. PERRY, Respondent.

(218 N. W. 229.)

**Bills and notes — suit on renewal note — fraud may not be set up in inception of original note.**

1. Where a bank takes a negotiable instrument by endorsement before maturity and without notice, as collateral to a valid and subsisting indebtedness, so as to become a holder in due course and thereafter the maker, subsequent to its maturity and while said note is still held as such collateral, renews it, the maker cannot thereafter set up fraud in the inception of the original note as a defense in a suit on the renewal note so long as the renewal note is held collaterally as substitute for the original note, and such holder has the same rights in the renewed note as it had in the original, even though the note is renewed in the name of the original payee.

**Bills and notes — when maker may not question holder's right, note being collateral for valid debt.**

2. Where such renewal note is still held as collateral, the holder is entitled to the endorsement of the transferer as a matter of law, and the maker, with knowledge of the rights of the holder, either in fact or so as to put him on inquiry, having renewed the note in the name of the original payee, cannot question the right of such holder so long as the note remains as such collateral.

Opinion filed December 30, 1927. Rehearing denied March 23, 1928.

Bills and Notes, § 658 p. 445 n. 17; § 659 p. 445 n. 19.

Appeal from the District Court of Stark County, *Pugh,* J.
Reversed.

*J. W. Sturgeon,* for appellant.

"Facts omitted from original answer should be pleaded by way of amendment." Murphy v. Plankington Bank (S. D.) 100 N. W. 614.

A plea merely using the term "supposed," in reference to the cause of action alleged, is good. 31 Cyc. 216 (b).

Matters in avoidance should consist of facts—not legal conclusions or matters of evidence. 31 Cyc. 217 (c).

"Where one takes a note in good faith, for value, and before maturity as collateral to a loan to the payee he does not lose his rights as a holder in due course because he takes the collateral note in place of the original debt, although after maturity or after notice." 8 C. J. 494, note 60; City Nat. Bank v. Kelley (Okla.) 151 Pac. 1172. .

"The endorsement and delivery of negotiable paper as collateral security before maturity, passes the legal title to the holder with power to collect by suit or otherwise subject to the rights of the endorser at the application of proceedings." 3 R. C. L. ¶ 202; Logan v. Cassel, 32 Am. Rep. 453; McNary v. Farmers Nat. Bank (Okla.) 124 Pac. 286, 41 L.R.A. (N.S.) 1009 and note.

"The negotiable instruments law defines the holder as payee or endorsee of a bill or note in possession thereof or its bearer." 8 C. J. 820, ¶ 1082, note 80.

"Where one who takes a note in good faith for value before maturity as collateral to a loan to the payee he does not lose his rights as a holder in due course because he takes the collateral note in place of the original debt, although after maturity or after notice." 8 C. J. 494, ¶ 704,

note 60 and cases cited; City Nat. Bank v. Kelley (Okla.) 151 Pac. 1172.

*Crawford, Cain & Burnett,* for respondent.

"A pledge to secure an unsatisfied debt cannot be held by the pledgee as security for any other obligation, whether such obligation exists at the time of the pledge or accrues afterwards, except by express agreement between the pledgor and the pledgee." 21 R. C. L. 653, ¶ 18.

"It is generally held that the pledgee's lien is lost the moment he claims the right to detain the pledged property upon a different ground." 21 R. C. L. 653, ¶ 21.

Property transferred as collateral for one debt cannot, in the absence of special agreement, be held by the pledgee for any other debt or obligation of the pledgor. 31 Cyc. 820, ¶ 2.

"Where securities are pledged to a banker for the payment of a particular loan or debt, he has no lien on the securities for a general balance or for the payment of other claims." Reynes v. Demont, 37 L. ed. 934.

"Property pledged as collateral for a note will be released under the same circumstances that surety personally bound would be." Bank v. Wright, 17 L.R.A.(N.S.) 1172.

BURR, J. The plaintiff as receiver sues the defendant on a promissory note for $108.66, made, executed and delivered by the defendant on October 15, 1920, to the Publishers National Service Bureau, a corporation, and in his complaint alleges "that for a valuable consideration, before maturity, and in due course said note was sold, endorsed, and set over to the said Scandinavian American Bank of Fargo, North Dakota, who is now the owner and holder thereof."

The defendant in his amended answer alleges the note was secured by fraud and among other things, "alleges that in the year 1919 he was induced to execute and deliver a note to the Publishers National Service Bureau by fraud and fraudulent representations and mis-statements of facts—that said note above described was not paid by the defendant, and thereafter and on or about the fifteenth of October, 1920—the Publishers National Service Bureau, its agent or agents requested the defendant to renew said note by the giving of a new note with the interest on the old note added thereto; that the defendant refused to execute and deliver a new note—and, that the Publishers National Service

Bureau at said time and place for the purpose of inducing this defendant to sign said renewal" made certain representations and allegations to induce him to sign, "and that the defendant relying upon the promise and representations and allegations—and believing the same to be true executed and delivered to the Publishers National Service Bureau the note described in the complaint herein and with the further understanding and agreement with said Publishers National Service Bureau that it would return to this defendant the original note signed in 1919" and that the bank failed to return the note. The defendant sets up further defenses in which he denies that the plaintiff is the holder in due course and alleges that if the bank did receive the note it took it as collateral and that the debt for which the collateral has been given has been paid, and satisfied; that there was no consideration for the note; that the plaintiff knew and had knowledge of the fraudulent representations and statements made by the Publishers National Service Bureau to induce defendant to sign the note; that the note was never legally endorsed and delivered to the plaintiff; that the plaintiff had notice and knowledge of the representations and allegations of the Publishers National Service Bureau made to induce the defendant to sign the renewal note. There are many other allegations which are not necessary to note at this time. The case was submitted to a jury who found in favor of the defendant.

At the close of the case the plaintiff moved for a directed verdict, and after the return of the verdict moved for judgment notwithstanding the verdict or for a new trial. Both motions were denied by the court.

The appellant has some 84 specifications of error, many of them dealing with the introduction of evidence. We consider only those which refer to rulings with reference to the proof of plaintiff's title to the note, failure to give certain requested instructions and the portions of the charge which refer to the law of title to a negotiable instrument.

The plaintiff asked the court to give the following instructions:

"You are further instructed as a matter of law that every holder of a note is deemed prima facie holder in due course, and this includes notes held as collateral, and in this case it is deemed that the plaintiff herein is a holder in due course of the note in suit until the defendant proves by a fair preponderance of the evidence that such plaintiff is not

a holder in due course, or that title to said note in the payee was defective."

"You are further instructed as a matter of law that the presumption that a holder of a note is a holder in due course is not met by a denial in the answer of the ownership of the note by the plaintiff; neither is the presumption rebutted by an allegation in the answer that the plaintiff is not a holder for value in due course and before maturity, and notwithstanding such allegations in the answer, plaintiff's prima facie case is established by the proof of execution and the endorsement on note before maturity to him."

"You are further instructed as a matter of law that it is presumed that a promissory note was given or endorsed for a sufficient consideration, and this presumption abides with said note until the contrary appears from the evidence."

"You are further instructed as a matter of law that if you find by a fair preponderance of all the evidence that the original note, of which the note in suit is a renewal, was endorsed to the plaintiff bank before maturity and in due course, that then and in that event, the plaintiff is a holder and the owner in due course of the note in suit, and your verdict should be for the plaintiff for the full amount of the note with interest."

"You are further instructed as a matter of law that the imprint of the payee corporation of the note on the back thereof, and placed thereon by someone with authority, is sufficient endorsement of said note so as to transfer the ownership thereof."

All of these requests were refused. In lieu thereof the court charged the jury as follows: "If the note was obtained as I have indicated to you through the false representation of the Publishers National Service Bureau and you find that it was so obtained then the Publishers National Service Bureau would have no right, title or interest in that note whatever. That same interest would be the only interest that the bank would obtain therefrom in the event that you find that the note was induced—that the execution of the note was induced thru fraud." Again, in another portion of the charge, the court said: "If you find in this case that the defendant gave the note in question but if you find also by a fair preponderance of the evidence that the note was induced through fraudulent representations of the Publishers National Service

Bureau then your verdict must be for the defendant, or if you find that the note was given as alleged in the complaint and that it is owned or held by the Scandinavian American Bank but that there was no consideration given for the note, that is that the bank received no consideration therefor and that that fact has been proven to you by the defendant by a fair preponderance of the evidence then your verdict would be for the defendant in this case." The court had already said: "Where the holder of an instrument, payable to his order transfers it for value without endorsing it, the transfer vests in the transferee (that would be the bank) such a title as the transferer had therein." It is evident therefore the court considered there was no proof of endorsement and that the bank was not a holder in due course. The court sustained an objection to the proof offered by the plaintiff for the introduction of Exhibit 1 as a whole, and when Exhibit 1 was received in evidence it was received only as to the face of the note.

The defendant says he gave a note to the Service Bureau for stock in a corporation to be formed for the purpose of combining and publishing two newspapers and that he never paid this note. That some time after it was due he signed Exhibit 1 as a renewal thereof.

The undisputed testimony as to endorsement is furnished by one Sherman who was witness for the plaintiff. He testified he was the cashier of the Scandinavian American Bank from February 1, 1919 to February 1, 1920 and during such period as such cashier he made loans to the Publishers National Service Bureau taking collateral therefor amounting to between $70,000 and $80,000 and that among the collateral taken was a note given by the defendant and executed May 13, 1919 and received by the Bank May 28, 1919; that this note was made to the Publishers National Service Bureau and endorsed by the bureau to the bank; that he checked over all the collateral when he received it; that all of the collateral notes were endorsed and turned over; that the endorsement on the back of the note was made by one Jos. Gilbert who at that time was president of the bureau and that the other collateral notes were all endorsed by the one who was president at the time of endorsement—Gilbert, and his successor Brinton, and his successor Liggett—that he had handled all of these details himself and that the loans were made on the strength of this collateral. He testified positively that he had no knowledge of any defect in the note and that when he

made these loans to the Service Bureau he took the collateral in good faith as collateral. There is no attempt to dispute his testimony as to the endorsement on the original note, or that it was placed there by the president·of the Service Bureau. It appears conclusively that the original note was brought to the bank by the service bureau, endorsed by its president, and turned over to the bank as collateral. On the strength of this and other notes loans to the extent of $30,000 were made to the service bureau from time to time, and the witness testified that all of the collateral was to remain as security for all of the loans no matter when the loans were made.

The original note is not in evidence. The record shows that on or about October 15, 1920, one Guldeman had the original note in his possession and went to the home of the defendant for the purpose of having that note paid or renewed. There is·no dispute about this. Guldeman testified to it and no one does or can dispute it. He interviewed the defendant at that time and according to the defendant's testimony there was no one present at the interview but himself and Guldeman. Defendant says that Guldeman told him, among other things, that the bank examiner wanted the note renewed on account of it being overdue, and it would have to be renewed or taken up. He was asked: "He told you that these notes were owned by the Scandinavian American bank, is that true? A. I don't know as he mentioned any bank that they were owned by. Q. But they were owned by some bank? A. Yes sir." He said he renewed the note because he did not want any trouble; that Guldeman did not give him the old note and that the old note had been executed some time in September, 1919. Guldeman testified that he told the defendant the bank examiner wanted the note renewed or taken up and that it was held by the Scandinavian American bank, and testified further that he delivered the old note to the defendant. The defendant insists that the date of the execution of the original note is important because the record shows the original note was in the possession of the Scandinavian American bank and that the bank claimed to hold it as collateral for loans made to the Service Bureau between May, 1919 and August 27, 1919 and that the bank admitted that the only collateral it took from the Service Bureau was taken prior to August 27, 1919.

Witness Guldeman who took the renewal does not say from whom he

got the original note but he says he was not sent out by the Scandinavian American Bank. Undisputed testimony from the books of the bank shows the original note is listed among collateral, is dated May 13, 1919, and was put up as collateral on May 28, 1919. This is shown by the records of the bank introduced in evidence. The testimony shows that the records were made in due course of business by the one authorized to make them, by one in the employ of the bank and whose duty it was to make the record. The witnesses Sherman the cashier, and Brevik the assistant cashier testify to these facts. The defendant Perry does not say that he ever executed any other note than the note which the bank says was made in May, 1919, and the renewal thereof. Neither does Perry explain how there was a note signed by him and dated May, 1919. The evidence further conclusively shows that the indebtedness of the Service Bureau to the bank has never been paid in full, that some time in April, 1920 the amount due was divided into four notes for $6,738.50 apiece, each signed by an individual, only one of these being paid, and that the collateral was to stand as security for these four notes. As this was some six months before the renewal it is evident that the original of exhibit 1 was still collateral to the indebtedness of the service bureau as represented by the notes given by these four individuals, so that at the time of the renewal the Scandinavian American bank according to the testimony of the witness Sherman, had an interest in the note which it had obtained, before maturity for value and without notice. Plaintiff had shown that the original note was put up as collateral before maturity and loans made on the strength thereof. And that this was done without notice of any defect. The bank therefore was a holder of the original note in due course. First Nat. Bank v. Bailey, 54 N. D. 534, 210 N. W. 26. It is true mere possession of Exhibit 1 would not have entitled the bank to enforce it as a holder in due course without proof of endorsement, though there was a purported endorsement on the back of it (Embden State Bank v. Schulze, 49 N. D. 777, 193 N. W. 481) and that the presence of an endorsement on the back does not in itself furnish the proof; there must be proof of the endorsement in addition (First Nat. Bank v. Bratsberg, 52 N. D. 876, 204 N. W. 665.) But written authority on the part of the agent to endorse a negotiable instrument belonging to a corporation need not be produced. McLeod State Bank v. Vandemark, 51 N. D. 573, 200 N. W. 42. The

undisputed proof is that the original note was endorsed by the President of the Bureau for the purpose of getting loans for the Bureau and that the Bureau secured the loans. In the absence of proof to the contrary it is presumed he had ex-officio power to make the endorsement. See Citizens State Bank v. Skeffington, 50 N. D. 494, 196 N. W. 953. The plaintiff in this case was a holder for value in due course when the renewal note was given. Under the facts in this case the defendant could not have made good his claim of fraud against the plaintiff in a suit on the old note, for the undisputed testimony shows that. if there was any fraud in the inception of the old note it was not known to the Scandinavian American Bank at the time it took the note and it had no reason to believe there was anything wrong with the note. It took it in due course of business as collateral to a loan furnished on the strength of this note and other notes, and it was properly endorsed to it by one having authority.

We keep in mind that this is not an action between the parties to the original note. The defendant in his answer sets up the defense of fraud in the inception of the original note, but we are not dealing with a case where the renewal is given to the original party who was guilty of the fraud, misrepresentations, or who failed to give consideration. As between the maker and the payee a renewal note would not be a waiver of defenses. Grebe v. Swords, 28 N. D. 330, 149 N. W. 126; Scandinavian American Bank v. Westby, 41 N. D. 276, 172 N. W. 665. In this latter case the court is careful to limit this principle to actions "between parties to the original obligation." If it were the first note which was being held by the transferee without endorsement then such defenses could be set up. Emerson-Brantingham Co. v. Brennan, 35 N. D. 94, 159 N. W. 710. But this first note had been properly endorsed and transferred so as to make the bank a holder in due course.

Where one gives a note in renewal with knowledge of failure of consideration or false representations in securing the old note he waives such defense to the new note. 8 C. J. 444; Haglin v. Friedman, 118 Ark. 465, 177 S. W. 429 (failure of consideration); Stewart v. Simon, 111 Ark. 358, 163 S. W. 1135, Ann. Cas. 1916A, 825 (failure of consideration); Roess Lumber Co. v. State Exch. Bank, 68 Fla. 324, L.R.A.1918E, 297, 67 So. 188, Ann. Cas. 1916B, 327 (failure of consideration and false representations).

If a party is induced by fraudulent acts to execute a note and afterwards renews the note with full knowledge of the fraud then such renewal would operate as a waiver of his right to urge the same as a defense against said renewal note. Campbell v. Newton, 52 Okla. 517, 152 Pac. 841.

Where the defendant elected to sign a new note he waived his right to the defense of fraud under an action brought on the renewal note. The renewal note is a new contract and binding. McCormick Harvesting Mach. Co. v. Yoeman, 26 Ind. App. 415, 59 N. E. 1069.

The evidence is undisputed that the bank was a holder in due course of the original of Exhibit 1 and had the same interest in that note when Exhibit 1 was taken in renewal. It is true that renewal was taken in the name of the Bureau but it also had an interest in the note, and it was proper to do this. This note Exhibit 1 bears on the back the endorsement by rubber stamp "Publishers National Service Bureau." There is no evidence showing who placed the stamp thereon, but it is our view, when we consider the original note, where it was, the interest the bank had in it, the statements as to a bank made when defendant signed the renewal, the possession by the bank, and all the other facts in the case there was sufficient evidence of right to possession by the bank to entitle the plaintiff to judgment unless the contrary was shown. The interest of the bank in the note sued upon is the same as if the note had been taken directly to the bank, or with the endorsement conclusively proved. The bank therefore, was a holder of the original note in due course at the time the renewal was made. And the evidence, both of the defendant and of the agent Guldeman who took the renewal, shows that the renewal was taken for a bank because of the objections of the bank examiner. Witness Guldeman says he told the defendant it was the Scandinavian American Bank. There is dispute on this point but the defendant admits that when he renewed the note he knew that it was being held by a bank, and that he renewed it for a bank.

In the action on this note the plaintiff produced Exhibit 1. The evidence shows that at the time the renewal note was taken the original belonged to the bank and though the renewal was taken in the name of the National Service Bureau the indebtedness for which the original was collateral had not been paid. The renewal note came into the possession of the bank. Plaintiff made a prima facie case when he intro-

duced the note. Smith v. Ryan, 175 Ark. 23, 298 S. W. 500. Under the provisions of § 6934 of the Code "Where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferer had therein," and as said in Callahan v. Louisville Dry Goods Co. 140 Ky. 712, 131 S. W. 995, "No endorsement is necessary to invest the holder with the presumption of ownership arising from the possession." Under the provisions of Section 6934 the transferee has the right to have the endorsement of the transferer. Defendant did not ask to have the Publishers National Service Bureau brought into the case and as stated in Columbia Hotel Co. v. Rosenberg, — Or. —, 260 Pac. 235, "plaintiff was in possession of the promissory note and produced it at the trial. The effect of a transfer of a negotiable instrument without endorsement is to reduce it to mere chose in action.—The presumption is that plaintiff is the owner of the note.—Since the note is in its possession and was produced at the trial, defendant is not likely to be called upon by some other person to pay the note.—Plaintiff being the owner of the note is the real party in interest." The Oregon court then cites § 7841 of the Laws of Oregon which is the same as our § 6934, and in the case cited applies to promissory notes payable to order, our principle set forth in § 7936, Subd. 11. We do not need to apply the presumption "that things which a person possesses are owned by him," though it has strong support in many jurisdictions. See Manhattan Chamber of Commerce v. Gallagher, 123 Kan. 155, 254 Pac. 345. However, what was said in Embden State Bank v. Schulze, 49 N. D. 777, 193 N. W. 481, and First Nat. Bank v. Bratsberg, 52 N. D. 876, 204 N. W. 665, does not detract from the force of § 6934 and the rights given thereunder. There is no reason in justice and equity why we should presume a possession is wrongful, in fact the presumption should favor a rightful possession.

In his answer the defendant alleges fraud in the renewal note. His testimony in this respect is found in the transcript beginning with page 113. We have already shown that no one was present at the renewal except the defendant and the witness Guldeman who took the renewal. Under his direct examination the defendant said that Guldeman told him "the note was past due and they were forced to renew the note

made at that time, the bank examiners wanted this done. That they intended to go ahead with the original plans and the only reason they had not been completed was because the farmers had not paid their money, but they intended to go through with it just the same as they planned in the first place." He then said that he believed this statement, relied upon it and would not have signed the note if Guldeman had not made these statements and if he had not himself relied upon them. He further states "they told me they would send the original note back," and if they had not promised to send the note back he would not have signed this renewal note. This is his testimony on direct examination. All this is disputed by Guldeman who says that whatever conversation they had regarding the project on hand was to the effect that "it is possible that I can make arrangements with the Publishers National Service Bureau to transfer that stock to somebody else, and if that transfer is made the other party who would take it would pay for it, and that would relieve Mr. Perry, and in the meantime the examiners of the bank, the Scandinavian American Bank, were complaining about the notes being past due and I told him that they were very desirous of having the note renewed and the interest paid." He denies saying anything about the service bureau buying up the papers or anything with reference to the original plan. He denies any statement that he would sell the stock for the defendant.

The statements which the defendant himself says were made to induce him to sign the renewal note fall far short of establishing fraud, but even those statements are afterwards withdrawn by the defendant himself. On his cross-examination he said:

"Well, the reason I signed the renewal note (was) that the proposition was going through all right and everything was all right but they had not got around to do all these things;" that was a little over a year after the original transaction; that the first fellow had lied to him and now another stranger comes along and talks to him. He then said:

"The only reason that I signed this second note was because I was unable to pay the first one and I didn't want any trouble about it so I signed the other." (See p. 125 of the Tr.) He said further that he had not given much thought at the time of the renewal to the fact that if the first person had misrepresented things to him he would not have

to pay the note if he did not get the stock. In other words it is clear from the testimony of the defendant himself that there was no fraud in the taking of the renewal unless the alleged agreement to return his original note could be said to be fraud.

It may be said that because Guldeman was not sent out by the bank therefore the renewal was between the original parties; but at the time of the renewal the defendant knew the note was held by a bank (his own testimony) or by the Scandinavian American Bank (Guldeman's testimony) and he knew he was renewing for the bank and not for the original payee. At the renewal the bank had the same rights in the renewed note which it had in the original and the right to have the proper endorsement. In such case renewal was not a waiver by the bank of its rights in the old note, and therefore as against the bank there are no more defenses to the renewal note than to the original note.

Some question seems to have been raised as to a conditional delivery of Exhibit 1. There is a dispute between the witness Guldeman and the defendant as to what took place at the time the note was renewed into Exhibit 1. Guldeman says he had the original note with him and delivered it to the defendant after receiving Exhibit 1. The defendant denies this and says that the witness Gouldeman agreed to have the original sent to him and that he signed the renewal on that agreement. He does not say that Guldeman was to hold the renewal until the old note was returned so as to make it expressly a condition. It is true that Exhibit 1 would have "no legal or valid existence until it had been delivered in accordance with the intentions of the parties and it is proper—to show—that the manual delivery of the note to payee was upon a condition which was in fact never fulfilled or performed." First Nat. Bank v. Wallace, 50 N. D. 330, 196 N. W. 303. While the plaintiff had the right to have the jury determine whether the renewal note was in fact conditionally delivered (Security Nat. Bank v. Mattson, 51 N. D. 893, 201 N. W. 690) yet even if he claimed conditional delivery, which is not claimed in the pleadings, no conditional delivery has been substantiated. He does allege there was an agreement to return the first note, but sets this up as part of the fraud alleged.

A review of the entire case shows plaintiff was entitled to judgment, and therefore the motion for judgment notwithstanding the verdict

should have been granted. The judgment is reversed and judgment ordered for plaintiff with costs.

NUESSLE, Ch. J., and CHRISTIANSON, BURKE, and BIRDZELL, JJ., concur.